HENRY J. REMMERS, Appellant, v. FREDERICK J. REMMERS, OTTO KULAGE, JOSEPH KULAGE and COLLEGE HILL PRESS BRICK WORKS.

Division Two, March 30, 1909.

1. **CONSPIRACY: Civil Action.** The mere fact that a conspiracy existed between defendants cannot be made the subject of a civil action. In addition there must be stated a concrete cause of action.

2. **FRAUD AND DECEIT: Necesary Elements.** To state a cause of action for deceit it is essential to aver that the representations made by defendants were false and known by them to be false, and that they were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and that relying upon them he was induced to act to his injury.

3. **ACTION AT LAW: Contradiction of Written Contracts.** In an action at law seeking to recover damages for the breach of a contemporaneous oral agreement, a petition which seeks to contradict the written contracts but does not seek to alter or vary or reform them, does not state a cause of action.

4. **CONVERSION: Bankruptcy: Party Plaintiff.** Where a trustee in bankruptcy has been appointed who has charge of the bankrupt's estate, the proper plaintiff to recover personal property of the bankrupt alleged to have been converted by defendants, is the trustee, and not the bankrupt.

5. **BANKRUPTCY: Cheated Out of Property.** Where the bankrupt was, prior to bankruptcy, cheated or defrauded by defendants out of certain property or property rights, a cause of action for such tort can be maintained only by the trustee in bankruptcy. Torts affecting property are assignable.

6. **SLANDER: Cause of Action.** A petition to state a cause of action for libel or slander should contain a definite statement of the damaging and offensive language. A general allegation that defendants injured plaintiff's business by seeking to prevent the sale of brick manufactured by him, and by circulating false and hurtful reports reflecting upon his integrity, his good name and his business standing, does not state a cause of action.

7. **DAMAGES: No Cause of Action.** Plaintiff alleged that he was the owner of stock in certain corporations worth $47,500; that Frederick, Otto and Joseph were the owners of the majority of the stock of the defendant brick company and its directors and officers; that said company owned a plant for the manufacture of brick, which was out of repair, and to put it in repair would require a large expenditure of money; that defendants were desirous of leasing said plant to him, and acting principally through Otto, induced plaintiff, by promise of financial aid, to become the lessee of said plant for ten years at $5,000 a year; that said lease was in writing, and that he accepted said lease upon a mutual verbal agreement that plaintiff should pledge or hypothecate his stock with Otto to secure an immediate advancement of $8,000 and future advancements to the amount of $30,000 to make needed repairs in the plant; that he was to have the privilege of repaying said advancements at any time with interest; that he assigned the stock in writing to Otto without condition, but that it was mutually understood at the time that said assignment was a pledge; that said verbal agreements, though believed and relied upon by him, were not made by defendants in good faith, but were a part of a conspiracy entered into by them to cheat and defraud him out of his stock and to injure him in his good name, and business standing, and to get possession of the brick plant after he had put the same in repair, and after he had used $5,000 of the $8,000 to pay one year's rent and the balance and other moneys in repairing said plant and before he discovered defendants did not intend to keep their agreement to advance him other money; that defendants repudiated said pledge; that Otto appropriated said stock to his own use; and that in pursuance of said plan to cheat and defraud him they circulated reports reflecting upon his integrity and damaging to his business standing and good name, and induced certain creditors to have him declared a bankrupt in the Federal court, all to his damage in the sum of $75,000, for which he asks judgment. The lease contract and

the written assignment of the stock are set out in the petition. *Held*, that the petition does not state a good cause of action on any theory.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor, Judge.*

AFFIRMED.

*Benj. J. Klene* for appellant.

(1) The third ground of demurrer is "that plaintiff in his petition attempted to state a number of alleged causes of action in one count." To this we reply: 1. That the petition states but a single cause, and that a good one, against defendants. Ross v. Mineral Land Co., 162 Mo. 331; Mosby v. Commission Co., 91 Mo. App. 507; McManus v. Lee, 43 Mo. 206; State v. Walker, 98 Mo. 104. 2. But if this were not so, the demurrer is not well taken for the reason that this is not the proper manner of raising the point. Where causes of action which might have been properly joined in separate counts are improperly blended in one count, the remedy is not by demurrer, but by motion to require the pleader to elect which of the causes of action he will stand on. Fadley v. Smith, 23 Mo. App. 92; Ziedeman v. Molasky, 118 Mo. App. 106; Otis v. Bank, 35 Mo. 128; State to use v. Davis, 35 Mo. 406; Childs v. Railroad, 117 Mo. 414; Ziegenhein v. Tittman, 103 Mo. 553; Wilson v. Railroad, 67 Mo. App. 443; Lane v. Dowd, 172 Mo. 167; Bliss on Code Pl. (3 Ed.), 412. (2) The second ground of demurrer raises the point that the petition does not state facts sufficient to constitute a cause of action. 1. On this we join issue, and assert with all confidence that a single good cause of action is stated in this petition. Ross v. Mineral Land Co., 162 Mo. 331; Mosby v. Commission Co., 91 Mo. App. 507; McManus v. Lee, 43 Mo. 206; State v. Walker, 98 Mo. 104. 2. Specific acts

done to effectuate the conspiracy may be set forth and are not to be considered as constituting several causes of action, although they may be different in their particular character, were done at different times, and defendants do not claim to be interested in, or benefited by, each of them, or in the same degree as to any of them. 8 Cyc. 676, note 55. (3) The first ground of demurrer challenges the legal capacity of plaintiff to maintain this cause of action, because of the allegation that defendants caused him to be adjudged a bankrupt, claiming that the right of action, if any, is in his trustee in bankruptcy. On this we join issue, and reply: (a) "If the trustee has any power over a subject, it must be found in the bankruptcy act." In re Becher Bros., 15 Am. B. Rep. 229; Brandenberger on Bank., p. 689, sec. 2. (b) As the title to the cause of action asserted by defendants to be in his trustee, must be derived through the National Bankruptcy Act, we will not on this branch of the subject be aided by what may be or may not be assignable, or pass to the personal representatives of a dead man, by the law of this or any other State. Cleland v. Anderson, 11 Am. Bk. Rep. 605. (c) In the trial court, defendants asserted that the title to the cause of action was cast upon the trustee by either the 5th or 6th subdivision of section 70a of the National Bankruptcy Act, which are as follows: 5. "Property which prior to the filing of the petition he could by any means have transferred, or which might have been levied upon and sold under judicial process against him." 6. "Rights of action arising upon contracts, or from the unlawful detention of or injury to his property." (d) The fifth subdivision may be dismissed with the statement that the cause of action set forth in the petition is not property. In subdivision six causes of action are made a class by themslves, and hence indicate that Congress did not include them under the term property. Cleland v. Anderson, 11 Am. B. Rep. 605.

(e) The right of action—cause of action contained in the petition did not: (a) Arise upon contract. Cleland v. Anderson (Neb.), 11 Am. Bk. Rep. 604; Cleland v. Anderson (Neb.), 10 Am. Bk. Rep. 441; 66 Neb. 252; 92 N. W. 306; 96 N. W. 1075. (b) Nor from the unlawful taking or detention of or injury to plaintiff's property. Cleland v. Anderson (Neb.), 10 Am. Bk. Rep. 441; In re Haensel, 1 Am. Bk. Rep. 288; Crockett v. Jewett, 2 Ben. U. S. 514; In re Doherty, 135 Fed. 432; Held v. New York, 83 App. Div. 509.

*Robert L. McLaran* for respondents.

(1) A conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. Cooley on Torts (2 Ed.), p. 143; Hunt v. Simonds, 19 Mo. 583; Alexander v. Relfe, 9 Mo. App. 133; Nations v. Pulse, 175 Mo. 86; Hutchins v. Hutchins, 7 Hill 107; Parker v. Huntington, 2 Gray 127; Lavarty v. Vanardsdale, 65 Pa. St. 509; Collins v. Cronin, 117 Pa. St. 45; Kimball v. Harmann, 34 Md. 407; Garring v. Frazer, 76 Me. 37; Commercial Assur. Co. v. Shoemaker (Neb.), 88 N. W. 156. (2) The existence of a conspiracy is only material in that it gives the injured persons a remedy against parties not otherwise connected with the wrong. Cooley on Torts (2 Ed.), p. 144; authorities, supra. (3) Any cause of action which plaintiff may have had of the kind attempted to be stated in this petition is vested in his trustee in bankruptcy. U. S. Bankruptcy Law, sec. 70, clauses 5 and 6; Hyde v. Tufts, 45 N. Y. Super. Ct. (Jones & Spencer) 56. (a) Because any such right of action could have been assigned by plaintiff, and, in case of his death, would have descended to his personal representatives. Jewett v. Weaver, 10 Mo. 234; Smith v. Ken-

nett, 18 Mo. 154; Melton v. Smith, 65 Mo. 315; Snyder
v. Railroad, 86 Mo. 613; Doering v. Kinamore, 86 Mo.
588; Dean v. Chandler, 44 Mo. App. 338. (b) Because
any actionable injury of the kind claimed to have been
suffered by plaintiff was an injury to his property,
within the meaning of that term as used in the bank-
ruptcy act. Hyde v. Tufts, supra; Lawrence v. Hen-
nessy, 165 Mo. 670; Bailey v. People, 190 Ill. 28; Booth
v. People, 186 Ill. 43; State v. Chapman, 69 N. J. L.
464; Ex parte Steinman, 95 Pa. 220. (4) In order to
state a cause of action sounding in tort for false rep-
resentations and promises, a petition must set forth:
That defendant made representations of specific pres-
ent facts; that said representations were false, and so
known to be by defendants; that such representations
were made with the intention of deceiving plaintiff;
that plaintiff was deceived thereby, and, in reliance
thereon, acted to his injury. Furthermore, the rep-
resentations must be specifically set forth. Burnham
v. Boyd, 167 Mo. 185; Nagel v. Railroad, 167 Mo. 89;
Goodson v. Goodson, 140 Mo. 206; Bank v. Rohrer,
138 Mo. 369; Clough v. Holden, 115 Mo. 336; Hoester
v. Sammelwan, 101 Mo. 619; Butts v. Long, 94 Mo.
App. 687.

FOX, J.—This cause was brought to this court
by appeal on the part of the plaintiff from a judgment
of the circuit court of the city of St. Louis sustaining
a demurrer to plaintiff's amended petition. The peti-
tion, to which the demurrer was interposed, was as
follows:

"Plaintiff states that at the times herein stated,
the College Hill Press Brick Works was a corpora-
tion, organized under the laws of the State of Mis-
souri; that at said times the Carthage Marble and
White Lime Company was likewise a corporation
organized under the laws of the State of Missouri; that
plaintiff was on or about the 19th day of July, 1902, the

owner of twenty-nine shares of the capital stock of
the said Carthage Marble and White Lime Company,
of the par value of one hundred dollars per share,
and that said stock was, at that time, of the actual
value of, to-wit, $35,000; that at said times the Goesse
& Remmers Building and Contracting Company was
likewise a corporation organized under the laws of
the State of Missouri; that on or about the 19th day
of July, 1902, plaintiff was the owner of fifty shares
of the capital stock of said Goesse & Remmers Build-
ing and Contracting Company, of the par value of one
hundred dollars per share, and that said stock was at
that time of an actual value of, to-wit, $12,500; that
on and prior to the 19th day of July, 1902, the de-
fendants, Remmers and Otto and Joseph J. Kulage,
were the owners of more than fifty-one per cent of
the capital stock of said College Hill Press Brick
Works; that at that time said persons controlled said
corporation, and acted as its officers and directors;
that at said times said company owned a plant and
grounds for the manufacture of bricks, located in the
vicinity of College avenue and Broadway in the city
of St. Louis; that said plant had been unused for
several years and was in bad repair, and to put same
in condition for the manufacture of bricks would re-
quire the expenditure of large sums of money, that the
grounds surrounding the plant, valuable only for the
clay they contained, were covered with debris, re-
quiring the expenditure of large sums of money for
its removal; that on and prior to the 19th day of
July, 1902, defendants were desirous and anxious to
have the defendant, the College Hill Press Brick
Works, to lease the said brick manufacturing plant
and appurtenances to plaintiff, who at the time was
inexperienced in the manufacture of bricks; that being
so desirous to lease said brick manufacturing plant
and appurtenances to plaintiff, defendants, acting prin-
cipally through defendant, Otto Kulage, induced plain-

tiff by promise of financial assistance in repairing, maintaining and operating said plant, and by the representation that large profits could be made in the manufacture of bricks and the sale thereof, to become the lessee of said brick manufacturing plant and appurtenances; that said lease was in words and figures as follows, to-wit:

" 'This indenture made this 19th day of July, 1902, by and between the College Hill Press Brick Works, a corporation, party of the first part, and Henry J. Remmers, party of the second part, both parties residing and doing business in the city of St. Louis, Missouri, Witnesseth: That the party of the first part, for and in consideration of the covenants and agreements, hereinafter mentioned to be kept and performed by the said party of the second part, has this day demised and leased to the said party of the second part, all of the premises, machinery, tools and appliances used in connection with brick making, situate, lying and being in the city of St. Louis, and State of Missouri, known and described as follows, to-wit: Beginning at the southeast corner of City Block 3386, being the northwest corner of Bellview street and Linton avenue, and continuing on the north line of Linton avenue, crossing Von Phul and Zealand streets, to alley in City Block 3388, thence along the eastern line of said alley to the southern line of said alley crossing said Zealand and Von Phul streets to said Bellview street, then along the western line of said Bellview street, to the point of beginning. Also all the machinery, tools, appliances and fixtures of every nature and description, and in condition as said machinery, tools, appliances and fixtures as may be this present day on said premises.

" 'To have and to hold the above said described premises with all the privileges and appurtenances belonging to the same, unto the said party of the second

part, from this the 19th day of July, 1902, to the 19th day of July, 1912.

" 'And the said party of the second part, in consideration of the leasing of said premises as aforesaid, does covenant and agree .with the said party of the first part, to pay the said party of the first part, as rent for said premises, the sum of fifty thousand dollars in the following manner, to-wit: Five thousand dollars to-day, and forty-five thousand dollars divided into nine good, satisfactory and negotiable notes of five thousand dollars each, to mature and become payable on the first day of March, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911 and 1912. It is further agreed that at the expiration of such term of ten years, this lease may be extended for a further period of one year, at the same rental, namely, five thousand dollars per annum, payable by said second party to said first party. And it is further agreed by said party of the second part, that neither he nor his legal representatives will take any ground or clay lower than the established adjoining street grades, from said premises, nor will permit nor allow others to do so, nor will underlet said premises or any part thereof, or assign this lease, without the written assent of the said party of the first part had and obtained thereto; that he will put into repair, and at all times during the term of this lease, at his own expense, maintain and repair the kilns and boilers and press building, and aforesaid machinery, tools, appliances and fixtures on said premises; that the said party of the second part will peaceably deliver all of aforesaid premises, machinery, etc., up to said party of the first part, its heirs, executors, administrators and assigns at the termination of this lease, or at the option of said party of the first part, whenever said party of the second part fails to pay the said notes, or rent when due, or to keep or perform any other of the covenants and agreements heretofore stated.

" 'In witness whereof, the said parties have hereunto in the city of St. Louis, Missouri, and to duplicate copies hereof, set their hands the day and year first above written.'

"Plaintiff says that he accepted said lease upon verbal conditions mutually agreed to between the parties at the time, as follows: That the plaintiff should hypothecate or pledge his said fifty shares of stock in the Goesse & Remmers Building and Contracting Company, and his twenty-nine shares of stock in the Carthage Marble & White Lime Company, with the defendant, Otto Kulage, which as the defendants well knew at the time was substantially all the property possessed by plaintiff, to secure an advancement of eight thousand dollars then made to plaintiff by said Kulage, as well as further advancements, to an aggregate of $30,000, which said Kulage then and there agreed to make as needed by plaintiff in the repair, maintenance and operation of said plant. And it was also mutually agreed that the plaintiff should have the privilege of repaying the sums so advanced and to be advanced, at any time with legal interest, until all said advancements were paid, and that said Kulage should hold said stock until all said advancements were repaid, and not present the certificates representing the same to the issuing corporation for transfer on its books; that, thereupon, relying on the promises and agreements aforesaid, and in consideration thereof, plaintiff indorsed the blank power of attorney on the back of each of the certificates representing said stock, and at the same time executed a memorandum in writing, as follows, to-wit:

" 'St. Louis, Mo., July 19, 1902. This is to certify that I have sold to Otto Kulage the following shares of stock, namely, 29 shares of the Carthage Marble & White Lime Company; 50 shares of the Goesse & Remmers Building and Contracting Company, and that I authorize and hereby request the

transfer of said shares of stock to said Otto Kulage on the books of said corporation.'

"Plaintiff says that it was mutually understood and agreed between plaintiff and defendants, at the time, that while said memorandum was in form a certificate purporting to represent by its terms an absolute sale of said property, it was in fact mutually understood and agreed between plaintiff and said Kulage, at the time, that said transfer was only to be a pledge or hypothecation of said shares as security for the $8,000 then advanced and loaned to plaintiff by defendants, and was intended as well to secure other advancements that should be made to plaintiff from time to time as needed, as hereinbefore alleged, and to the extent hereinbefore stated.

"Plaintiff says that the execution and delivery by defendants to plaintiff of said lease; the said advancement of eight thousand dollars, on said stock, and the promise of other advancements, as needed to plaintiff by defendants, although believed by the plaintiff at the time to be made in good faith by the defendants, were not in fact made in good faith by the defendants or either of them, but were on the contrary a part of a plan, scheme and conspiracy entered into between the defendants to cheat and defraud plaintiff, and to deprive him of his said stocks and other property, and to injure him in his good name, fame and reputation, and in his business, and to secure for themselves the possession of said brick manufacturing plant and appurtenances, after plaintiff should have put the same in repair and condition for the manufacture of bricks.

"Plaintiff says that relying upon said promises of the defendants to make other and additional advancements as aforesaid, as provided in the agreement aforesaid, he paid the defendant, the College Hill Press Brick Works, $5,000 in full of the first year's rental of said plant and appurtenances, as provided

in the lease aforesaid, and entered into possession of said property under said lease, and expended large sums in necessary repairs and alterations, and began the manufacture of bricks before the defendants refused to advance, as agreed, other sums, and before he discovered that the defendants did not propose to keep their agreements with him, and make said other advancements; that about that time defendants, instead of acknowledging a pledge of said stock under the terms and conditions in said agreement provided, and as herein stated, repudiated the same and claimed ownership of said stocks; plaintiff also discovered about that time, that while defendants represented at and before the making and delivery of said lease that there was sufficient clay on said grounds to last ten years in the manufacture of bricks therefrom, and as provided in said lease, there was in reality only clay sufficient to last for about four years.

"Plaintiff further says that the defendants instead of keeping their said agreement to make the advancements as aforesaid, and relied on by plaintiff as aforesaid, never after the 19th day of July, 1902, made any other advancements to plaintiff under said agreement or otherwise; plaintiff charges that secretly and known only to themselves and without knowledge thereof by plaintiff, defendants never purposed or intended to keep their said agreement to make advancements other than said $8,000 and plaintiff charges that they made said advancement of $8,000 for the purpose of getting possession of plaintiff's said stocks and the said plant after plaintiff should have put the same in order and condition for the manufacture of bricks, and for the further evil purpose and intent of injuring plaintiff in his good name, fame and reputation, and for the purpose of driving him out of business and away from the city of St. Louis, all of which as well as the other evil purposes and acts as herein alleged, were a part of a plan, scheme and conspiracy

entered into between the defendants, for the purpose of cheating and defrauding plaintiff out of his said stocks, and of the investment of the funds secured by the pledge aforesaid, and other funds contributed and used by plaintiff in said business, as well as the dividends and earnings of said stocks.

"The plaintiff says that in pursuance of said plan, scheme and conspiracy to cheat and defraud plaintiff, although plaintiff fully kept and performed all the terms of said agreement required by him to be kept or performed, as well as the terms of the said lease, the defendants set about in pursuance of said plan, scheme and conspiracy systematically to undermine plaintiff in his business, reputation and credit, by seeking to prevent sales of brick by him, by circulating false and untruthful reports reflecting on his integrity, and by soliciting creditors of plaintiff whom he was unable to pay because of the default and refusal of defendants in failing to make the advancements as provided in the agreement as hereinbefore set forth, to bring against plaintiff an involuntary proceeding in bankruptcy in the District Court of the United States for the Eastern District of Missouri; that they did induce certain creditors of plaintiff to join certain of the defendants to bring such proceedings, and as a result on or about the 25th day of April, 1903, plaintiff was on the petition of said parties by said court, adjudged a bankrupt, by reason of all of which plaintiff has been injured in his good name, fame and reputation, has been humiliated and mortified, and has suffered great pain of body and mind, was rendered for the space of about one year almost a mental and physical wreck, and during that time was unable to follow any useful occupation, and plaintiff was ruined financially and in his business reputation and standing in the community, and that he has lost said stocks and the money invested by him in said brick business; and plaintiff has also lost his profits on the brick manufactured by him,

as well as the dividends on said stock, all to his damage in the sum of seventy-five thousand dollars and for his costs he prays judgment.''

To this petition the defendants interposed a demurrer, which was as follows:

''Now come the above named defendants, by their attorney, and demur to the amended petition filed by plaintiff, and for cause of demurrer state:

''First: That it appears upon the face of the petition that plaintiff has not the legal capacity to prosecute this action, for the reason that he has been adjudged a bankrupt under the laws of the United States, since the alleged happening of the matters and things in said petition mentioned and set forth.

''Second: That said petition does not state facts sufficient to constitute a cause of action against these defendants or any or either of them.

''Third: That plaintiff in his said petition has attempted to state a number of alleged causes of action in one count.''

On the 4th day of December, 1905, at the December term of said circuit court, this demurrer was sustained, and the plaintiff declining to plead further, final judgment was rendered upon the demurrer. From this judgment the plaintiff prosecuted this appeal, and the record is now before us for consideration.

OPINION.

The legal propositions disclosed by the record in this cause rest within a very narrow compass, that is, does the action of the court in sustaining the demurrer to the petition interposed by the defendants constitute such error as would warrant this court in reversing the judgment in this cause?

We have reproduced in full the petition of the plaintiff, as well as the demurrer interposed by the

defendants. Exhaustive briefs by learned counsel for appellant, as well as the respondents, are presented to us, in which numerous authorities are cited in support of the respective contentions of the parties to this litigation. It can serve no good purpose to burden this opinion with a review of the numerous authorities cited by counsel. We have carefully analyzed each and every allegation embraced in the petition and have fully considered all of the authorities applicable to the legal propositions confronting us, that is, whether or or not the petition in this cause states sufficient facts to constitute a cause of action. After a most careful consideration of the proposition presented to our consideration we have reached the conclusion that the petition in this cause does not state facts sufficient to constitute a cause of action upon which the plaintiff in this action has any right of recovery. While it is true that this petition alleges that there was a conspiracy between the defendants, and this allegation of conspiracy is repeated at different places in the petition, yet the law is well settled that the mere fact of a conspiracy cannot be made the subject of a civil action.

Mr. Cooley, in his standard work on Torts (2 Ed.), page 143, thus correctly states the rule: "The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action." Continuing the discussion of that subject Mr. Cooley says: "The. significance of the conspiracy consists, therefore, in this: That it gives the persons injured a remedy against parties not otherwise connected with the wrong. It is also significant as constituting matter of aggravation, and as such tending to increase the plaintiff's recovery." Hence, it follows that the repeated allegations of conspiracy between these defendants have but little significance, unless in addition there is stated a. concrete cause of action.

After making the formal allegations identifying the defendants, it is then alleged that "the defendants, Remmers and Otto and Joseph J. Kulage, were the owners of more than 51 per cent of the capital stock of said College Hill Press Brick Works; that at that time said persons controlled said corporation, and acted as its officers and directors; that at said time said company owned a plant and grounds for the manufacture of bricks, located in the vicinity of College avenue and Broadway in the city of St. Louis; that said plant had been unused for several years and was in bad repair, and to put same in condition for the manufacture of bricks would require the expenditure of large sums of money; that the grounds surrounding the plant, valuable only for the clay they contained, were covered with debris, requiring the expenditure of large sums of money for its removal; that on and prior to the 19th day of July, 1902, defendants were desirous and anxious to have the defendant, the College Hill Press Brick Works, to lease the said brick manufacturing plant and appurtenances to plaintiff, who at the time was inexperienced in the manufacture of bricks; that being so desirous to lease said brick manufacturing plant and appurtenances to plaintiff, defendants, acting principally through the defendant, Otto Kulage, induced plaintiff by promise of financial assistance in repairing, maintaining and operating said plant, and by the representation that large profits could be made in the manufacture of brick and the sale thereof, to become the lessee of said brick manufacturing plant and appurtenances." Then follows the contract of lease.

Clearly these allegations do not state any cause of action. It is not sought by the allegations of such promises and representations, which the plaintiff avers induced him to become the lessee of said brick manufacturing plant, to annul or cancel the contract of lease as entered into between the parties, and if such allega-

tions are made for the purpose of stating a cause of action for deceit they fall far short of meeting the requirements of the law upon that subject. It is essential to state a cause of action of that character to aver that such representations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and relying upon such promises and representations he was induced to act to his injury.

The petition then proceeds to state that "the plaintiff accepted said lease upon verbal conditions mutually agreed to between the parties at the time, that is, that the plaintiff should hypothecate or pledge his said fifty shares of stock in the Goesse & Remmers Building and Contracting Company, and his twenty-nine shares of stock in the Carthage Marble & White Lime Company, with the defendant, Otto Kulage, which as the defendants well knew at the time was substantially all the property possessed by plaintiff, to secure an advancement of eight thousand dollars then made to plaintiff by said Kulage, as well as future advancements, to an aggregate of $30,000, which said Kulage then and there agreed to make as needed by plaintiff in the repair, maintenance and operation of said plant. And it was also mutually agreed that the plaintiff should have the privilege of repaying the sums so advanced and to be advanced, at any time with legal interest, until all said advancements were repaid, and that said Kulage should hold said stock until all said advancements were repaid, and not present the certificates representing the same to the issuing corporation for transfer on its books." Then follows the allegation in the petition that it was by relying upon the promises and agreements as heretofore indicated, and in consideration thereof, that plaintiff executed the absolute bill of sale to the stock heretofore mentioned. It was further alleged in the petition that it was

"mutually understood and agreed between the plaintiff and defendants, at the time, that while said memorandum of the sale of said stock was in form a certificate purporting to represent by its terms an absolute sale of said property, it was in fact mutually understood and agreed between the plaintiff and said Kulage, at the time, that said transfer was only to be a pledge or hypothecation of said shares as security for the $8,000 then advanced and loaned to plaintiff by defendants, and was intended as well to secure other advancements that should be made to plaintiff from time to time as needed, as hereinbefore alleged, and to the extent hereinbefore stated."

Manifestly these allegations undertake to contradict the terms not only of the written lease but of the written memorandum by which certain shares of stock were sold by plaintiff to the defendants. Clearly whatever the nature of this action may be, when the petition is considered in its entirety, it manifestly undertakes to state a cause of action at law. This being true, clearly the plaintiff cannot be permitted to seek the contradiction of the terms of the written instrument heretofore indicated in that character of action. It is conceded by learned counsel for plaintiff that this is not an equitable proceeding for the purpose of reforming either the lease or the bill of sale as heretofore referred to. It nowhere appears from the allegations in the petition that plaintiff seeks to redeem the stock, and manifestly there is no breach of contract declared upon.

Counsel for appellant, in support of the foregoing allegation, direct our attention to the case of Culp & Co. v. Powell, 68 Mo. App. 238. An examination of that case will demonstrate that it falls far short of maintaining the contention of the appellant in this case. The well-settled rule which forbids the introduction of oral agreements prior to or contemporaneous with a written agreement, whereby the terms of the latter

are varied, altered or contradicted, is fully recognized in that case; however, on the other hand the rule is announced, which is equally well settled, that you may show that a written agreement never had any legal existence by reason of the fact that it was fraudulently accomplished, and in contemplation of law was no agreement at all. But that is not this case. The allegations now under discussion do not pretend to say that there was no agreement at all, but it is sought to vary, alter and contradict the terms of the agreement as heretofore mentioned. In other words, it is sought by these allegations in a pure action at law to reform written instruments and have them conform to certain verbal agreements which plaintiff alleges were made in addition to the written agreements. But aside from all this, the petition shows upon its face that there has been appointed a trustee in bankruptcy who has charge of the estate of the plaintiff, and if the allegation now under consideration means anything, that is, that the defendants fraudulently obtained the stock heretofore referred to, belonging to the plaintiff, and if it is sought by these allegations to recover this stock or damages for the conversion of it, or for the wrongfully procuring of it, clearly the trustee in bankruptcy is the only proper party plaintiff, and the present plaintiff is in no position to seek a recovery upon that ground.

Finally counsel for appellant insist that this petition states a cause of action for a conspiracy to defraud and injure plaintiff's reputation. In other words, the contention of the plaintiff is thus briefly stated by his counsel: "It is therefore respectfully submitted that the said petition states against the defendants a case of combination and conspiracy by means of the various matters alleged to defraud plaintiff and injure him in his good name, fame and reputation, against which he must have the relief prayed."

In the consideration of this insistence by appellant it is well to keep in view the allegations in the petition concerning the particular cause of action plaintiff insists is embraced in his petition. The first allegation to which our attention is directed is: "Plaintiff says that the execution and delivery by defendants to plaintiff of said lease; the said advancement of eight thousand dollars, on said stocks, and the promise of other advancements, as needed, to plaintiff by defendants, although believed by the plaintiff at the time to be made in good faith by the defendants, were not in fact made in good faith by the defendants or either of them, but were on the contrary a part of the plan, scheme and conspiracy entered into between defendants to cheat and defraud plaintiff, and to deprive him of his said stocks and other property, and to injure him in his good name, fame and reputation, and in his business, and to secure for themselves the possession of said brick manufacturing plant and appurtenances, after plaintiff should have put the same in repair and condition for the manufacture of brick."

Treating of the allegations in this petition wherein it is alleged that there was a conspiracy entered into between the defendants to cheat and defraud plaintiff, it is sufficient to say that those allegations cannot have any reference to anything else other than to cheat and defraud plaintiff out of some of his property or property rights, and so far as a statement of a cause of action to cheat and defraud the plaintiff is concerned, obviously that cause of action could only be maintained by the trustee in bankruptcy. In other words, if the plaintiff has been cheated or defrauded out of certain property, such cause of action rests with the trustee in bankruptcy.

The rule of the common law that no cause of action in tort, whether to person or property, could be assigned, has been very much relaxed, and the dis-

tinction is now marked between rights of action for tort affecting the person or family relations, and those affecting property.

In the case of Snyder v. Railroad, 86 Mo. 613, this court reviewed the authorities and expressly ruled that all causes of action arising in tort may be assigned which would survive to the personal representative, and in that case the court approvingly quoted from Mr. Pomeroy in his work on Remedies and Remedial Rights (sec. 147), wherein it was said: "It is now the general American doctrine that all causes of action arising from torts to property, real or personal—injuries to the estate by which its value is diminished, do survive and go to the executor or administrator as assets in his hands. As a consequence, such things in action, although based upon a tort, are assignable."

Our attention is next directed to the following allegations in plaintiff's petition: "Plaintiff further says that the defendants instead of keeping their said agreement to make the advancements as aforesaid, and relied on by plaintiff as aforesaid, never after the 19th day of July, 1902, made any other advancements to plaintiff under said agreement or otherwise; plaintiff charges that secretly and known only to themselves and without knowledge thereof by plaintiff, defendants never purposed or intended to keep their said agreement to make advancements other than said $8,000, and plaintiff charges that they made said advancement of $8,000 for the purpose of getting possession of plaintiff's said stocks, and the said plant after plaintiff should have put the same in order and condition for the manufacture of brick, and for the further evil purpose and intent of injuring plaintiff in his good name, fame and reputation, and for the purpose of driving him out of business and away from the city of St. Louis, all of which as well as the other evil purposes and acts as herein alleged, were

a part of a plan, scheme and conspiracy entered into between the defendants, for the purpose of cheating and defrauding plaintiff out of his said stocks, and of the investment of the funds secured by the pledge aforesaid, and other funds contributed and used by plaintiff in said business, as well as the dividends and earnings on said stocks.''

It is sufficient to say of these allegations that what was said respecting similar allegations to which attention has been directed, is equally applicable to these particular allegations. It will be observed that the plaintiff says that the defendants made the advancement of eight thousand dollars for the purpose of getting possession of plaintiff's said stocks, and the said plant after plaintiff should have put the same in order and condition for the manufacture of brick, and for the further evil purpose and intent of injuring plaintiff in his good name, fame and reputation, and for the purpose of driving him out of business and away from the city of St. Louis, all of which as well as the other evil purposes and acts as herein alleged, were a part of a plan, scheme and conspiracy entered into between the defendants, for the purpose of cheating and defrauding plaintiff out of his said stocks, and of the investment of the funds secured by the pledge aforesaid, and other funds contributed and used by plaintiff in said business, as well as the dividends and earnings on said stocks.

It will be noted that in the allegations now under consideration, in their final analysis, plaintiff expressly alleges that all of the acts as herein alleged were a part of a plan, scheme and conspiracy entered into between the defendants, for the purpose of cheating and defrauding plaintiff out of his said stocks, and of the investment of the funds secured by the pledge aforesaid, and other funds contributed and used by plaintiff in said business, as well as the dividends on said stocks. In this allegation we have marshaled

all the acts and allegations of evil purposes on the part of these defendants in which it is charged that those acts were done for the purpose of cheating and defrauding plaintiff out of certain funds, and other funds contributed and used by plaintiff in said business. Obviously, plaintiff, whose estate is now in the hands of a trustee in bankruptcy, is in no position to maintain the cause of action which is sought to be alleged by these allegations. By these allegations plaintiff sums up all of the acts of the defendants and alleges that those acts were committed for the purpose of cheating and defrauding him out of certain property. If the defendants should by false and fraudulent promises and representations have secured any property or property rights of the plaintiff the trustee in bankruptcy has full power to remedy such wrongs and recover such property as was fraudulently obtained or for any injury that has been done the property rights of the plaintiff.

Finally, plaintiff alleges that the defendants by "this conspiracy set about in pursuance of said plan, scheme and conspiracy systematically to undermine plaintiff in his business, reputation and credit, by seeking to prevent sales of brick by him, by circulating false and untruthful reports reflecting on his integrity, and by soliciting creditors of plaintiff whom he was unable to pay because of the default and refusal of defendants in failing to make the advancements as provided in the agreement as hereinbefore set forth, to bring against plaintiff an involuntary proceeding in bankruptcy in the District Court of the United States for the Eastern District of Missouri." It is sufficient to say of this allegation that if it is sought by it to state a cause of action for slander against the person or the business of the plaintiff, it is entirely insufficient. If the defendants sought to injure the business of the plaintiff by seeking to prevent sales of brick by him, by circulating false and untruthful re-

ports reflecting upon his integrity, then clearly there should be a definite statement made as to what the reports were and what was said. Clearly it will not be seriously contended that a mere general allegation as in the petition in this case that the defendants injured the business of the plaintiff by seeking to prevent sales of brick by him, by circulating false and untruthful reports reflecting upon his integrity, would be sufficient to constitute a good cause of action. The offensive language, as well as the reports charged to have been false and the acts of the defendants, under the well-settled rules of law should be distinctly averred. The allegations of this petition now under consideration fall far short of constituting a cause of action for slander or libel of the person or business of the plaintiff.

We see no necessity for pursuing this subject further. We have carefully analyzed all of the allegations in the petition and have considered them in every phase to which they may be applicable, and we see no escape from the conclusion that there is no well-defined or concrete cause of action stated by the plaintiff.

We have examined the authorities to which our attention was directed by learned counsel for appellant, and it is sufficient to say that an examination of them fails to disclose that they are in any way in conflict with the conclusions as herein reached.

The trial court correctly and properly sustained the demurrer interposed by the defendant, and its judgment upon such demurrer should be affirmed, and it is so ordered.

All concur.