**DILLARD DEPARTMENT STORES, INC., Plaintiff–Respondent,**

v.

**Arthur G. MUEGLER, Jr., Defendant–Appellant.**

No. 55962.

Missouri Court of Appeals, Eastern District, Division Five.

June 13, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1989.

Application to Transfer Denied Sept. 12, 1989.

Arthur G. Muegler, Jr., St. Louis, pro se.

Larry D. Valentine, St. Louis, for plaintiff-respondent.

SIMEONE, Senior Judge.

## I.

This is an appeal by appellant, Arthur G. Muegler, Jr., an attorney, *pro se,* from two final orders of an associate circuit judge of St. Louis County entered on February 23, 1988 and October 14, 1988. The February 23, 1988 order denied appellant's motion for leave to file a first amended counterclaim and granted plaintiff, Dillard Department Stores, Inc.'s motion for summary judgment on appellant's counterclaim for "abuse of legal process." The October 14, 1988 order sustained the plaintiff-Dillard's motion to dismiss Count III of a purported counterclaim against Dillard filed September 16, 1988 seeking actual and punitive damages for defamation. We affirm.

Appellant makes three points on appeal for reversal. He contends the trial court erred in (1) denying him leave to file a first amended counterclaim for abuse of process on February 23, 1988, because the trial court "clearly abused its discretion, and violated Rule 55.33" which provides that

leave of court shall be "freely given" and because his counterclaim pleaded the ultimate facts for an action of abuse of process, (2) sustaining the plaintiff-Dillard's motion for summary judgment on his counterclaim for abuse of process for the reason that Dillard was not entitled to judgment as a matter of law because the counterclaim alleged the necessary elements of an abuse of process claim and showed that he was directly damaged, and (3) dismissing Count III of his amended counterclaim for defamation on October 14, 1988 because Dillard, in writing and on computer tapes and printouts, falsely published slanderous and libelous statements against him which disparaged his character and his conduct in his profession as an attorney.

## II.

On August 11, 1986, the marriage of the appellant and his wife, Gail Aylward Muegler, was dissolved pursuant to a decree of dissolution entered in the circuit court of St. Louis County. A "Stipulation and Property Settlement Agreement" was incorporated in the decree. The decree ordered that the parties "perform the terms of their separation agreement ... incorporated herein, and made a part of this decree." Paragraph 8 of the Agreement provided that certain marital debts, including a debt to Dillard were to be assumed by appellant as "his sole obligation" and further provided that "[i]f one party is caused or required to pay and discharge the assumed debts of the other party herein, ... the payor party is entitled to full indemnification from the non-paying party ..." [1]

Dillard filed a petition for "goods, wares and merchandise" on February 4, 1987 against appellant and his former wife. Appellant then filed a 10 page answer and counterclaim. The answer denied the allegations of two of the three paragraph petition, asserted twelve affirmative defenses and counterclaimed against Dillard for an "Intentional tort—Abuse of Legal Process," and sought $500,000 actual damages

and $1,000,000 in punitive damages. This counterclaim alleged that appellant never authorized any person to open or establish any credit account with Dillard, that Gail was not his agent, servant or employee, and that any "goods, wares and merchandise" sold by Dillard to Gail on or prior to August 11, 1986 were sold to her in her individual capacity, and such sales were not authorized by appellant nor had he knowledge thereof. He alleged that Dillard "intentionally, willfully and maliciously" caused the petition to be filed and "willfully, recklessly, wantonly and maliciously" caused said process to issue to embarrass him, to coerce him to settle the account, to "extort" money not legally due or owing, and showed a "complete indifference to, or a conscious disregard for, the life, safety and reputation of Defendant." Attached to the answer and counterclaim were several letters addressed to Dillard, a portion of which "instructed" Dillard to "be careful to avoid slandering my name and credit for someone else's debt ..." One letter to Dillard dated August 19, 1986, after the decree of divorce, informed Dillard that "as a part of the dissolution, I contracted with Gail Muegler (not you) to assume $3,306.05 of her debt to you under the above account. Accordingly, enclosed please find a cashier's check ... in the amount of $900.00 in partial payment of this account ..." In another letter dated September 23, 1986, appellant informed Dillard that "in my August 19 letter I advised you I contracted with Gail Muegler to pay you $3,306.05 on *her* behalf when I got good and ready to pay it. Prior to our recent telephone conversation I had planned to pay off the remaining $2,406.05 balance of my obligation to Gail Muegler in September–November, 1986. Now, I don't plan to pay you anything until my claim against you is disposed of to my satisfaction...."

Because appellant's counterclaim exceeded the jurisdictional amount at that time of an associate circuit judge, the cause was

---

1. Paragraph 8 of the Agreement stated that "wife has approximately $10,500 of marital debt billings.... Such marital debts up to $10,500 shall be assumed by husband as his sole obligation.... This list of assumed debts is attached as Exhibit A." Exhibit A included a debt to Dillards in the amount of $3,380.03.

transferred to the presiding circuit judge for further assignment. The cause was assigned to Hon. Joseph A. Goeke, sitting as a circuit judge. On April 14, 1987, Dillard filed a reply to the counterclaim contending that the counterclaim failed to state a claim.

Meanwhile, discovery took place between May, 1987 through early February, 1988. On February 9, 1988, Dillard filed a motion for summary judgment, pursuant to Rule 74.04, on the appellant's counterclaim for abuse of process, alleging that the counterclaim did not plead "ultimate facts" establishing the elements of an abuse of process claim, and that Dillard was "merely attempting to use the process to recover what it believed and believes to be a just debt." Dillard prayed for an order dismissing the counterclaim.

The next day, February 10, 1988, appellant sought leave to file a first amended answer and first amended counterclaims for abuse of process in Count I, and Count II for defamation. The motion for leave to file such amended counterclaims was not granted by any judge. Attached thereto were the same letters attached to the original answer and counterclaim.

Then on February 23, 1988, after argument on Dillard's motion for summary judgment and appellant's motion for leave to file the amended counterclaim, the trial judge granted leave to file an amended answer but denied appellant leave to file the First Amended Counterclaim and granted Dillard's motion for summary judgment on appellant's counterclaim. The order was made effective as of March 4, 1988 so as to allow appellant to seek a writ in this court. A petition for a writ was filed but denied.

Despite Judge Goeke's order of February 23, 1988, on or about April 19, 1988, appellant sought, and was granted, leave from a visiting substitute judge to file an amended answer and counterclaims to Dillard's petition. Although this motion and amended answer and counterclaims are not included in the file in this court, the minutes show that leave was sought and granted and a "First Amended Counterclaim" was filed

on April 19, 1988. Subsequently, on May 4, 1988, Dillard filed a motion to dismiss the amended counterclaims and for sanctions and a protective order. On June 23, 1988, Dillard "called up" its motion to dismiss, and on August 9, 1988, Judge Goeke "rescinded" the order of April 19, 1988 granting leave to file a first amended counterclaim and "held for naught" the filing of the amended counterclaims. At the same time an alias summons was ordered to issue to Gail Muegler. She was served on August 26, 1988.

Gail then filed a separate answer to the petition and a cross-claim against the appellant. On September 16, 1988, appellant filed his answer to Gail's cross-claim denying certain allegations and setting forth affirmative defenses. Appellant also filed counterclaims against Gail and Dillard in three counts—Count I, fraudulent misrepresentation; Count II, breach of contract, and Count III, defamation which alleged similar allegations as those in the February 10, 1988 counterclaim.

On September 30, 1988, Dillard then filed its second motion to dismiss, for sanctions and a protective order seeking to dismiss the defamation count and seeking sanctions against appellant for attempting to interpose a claim for an improper purpose. Dillard alleged that despite the orders of Judge Goeke of February 23, 1988 dismissing the abuse of process and defamation counts, appellant has refiled the counterclaims. "This refiling," Dillard stated "constitutes frivolous, abusive, groundless, baseless, and vexatious litigation." It is "devoid of merit" and "there is no prospect of success."

On October 14, 1988, Judge Goeke ordered that Count III, the defamation count be dismissed, sustained Dillard's motion for sanctions and ordered appellant to pay the attorneys for Dillard, $256 for four hours attorneys' fees. The court also granted the motion for a protective order and set the cause for trial.

Subsequently, on October 19, 1988, Gail A. Muegler dismissed her cross-claim against appellant, and on November 17, 1988, Dillard dismissed its cause against

Gail and appellant. On December 6, 1988, appellant dismissed all his claims against Gail leaving the orders of February 23, 1988 and October 14, 1988 regarding the counterclaims final for purposes of review.

### III.

As to his first two points which may be considered together—that the court erred in declining to grant leave to file an amended counterclaim for abuse of process and defamation, and granting respondent's motion for summary judgment, appellant argues that under Rule 55.33, leave to amend shall be freely given, that his motion for leave was timely, and that it is an abuse of discretion to deny a party leave to amend a pleading deemed insufficient by the trial court.

The motion for summary judgment filed by Dillard to the appellant's asserted counterclaims for abuse of process and defamation was, in reality, a motion to dismiss for failure to state a claim because it alleged that it did not plead the ultimate facts establishing the elements of abuse of process, and in effect was treated as such by the trial court. A motion to dismiss and a motion for summary judgment are interrelated. Rules 55.27(a) and 74.04. A reply had been filed by Dillard in 1987, so that leave of court was required to file an amended pleading.

 We recognize that, while a court should be liberal in permitting amendments to pleadings, it is primarily within the sound discretion of the trial judge whose action will not be disturbed where such discretion has not been palpably and obviously abused. *Kopff v. Miller*, 501 S.W.2d 532, 535–36 (Mo.App.1973); *Dennis v. Sears, Roebuck & Co.*, 461 S.W.2d 325, 328 (Mo.App.1970); *Baker v. City of Kansas City*, 671 S.W.2d 325 (Mo.App.1984); *Mullen v. General Motors Corp.*, 640 S.W.2d 144, 146 (Mo.App.1982). It is also axiomatic that the pleadings are to be given their broadest intendment, accepting as true the facts pleaded with all reasonable inferences arising therefrom. If, viewed in this light, the allegations invoke principles of substantive law, which if proved may entitle the pleader to relief, the petition is not to be dismissed. *See Shapiro v. Columbia Union National Bank & Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. den.*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

Whether the trial court's discretion was abused in this case depended upon certain factors, one of which was whether an abuse of process claim was asserted by appellant.

 The sought for amended counterclaim to state a claim for abuse of process did not contain the essential elements of such a claim and it is doubtful whether such a valid claim could be asserted under the circumstances. It has been said that "some confusion" exists as to the nature and essentials of an action for abuse of process. The general rule is that no right of action exists for damages resulting from the initiation of a civil action, unless the action was prosecuted maliciously and without probable cause or there was an abuse of process. The law of Missouri is well settled. To plead a claim for abuse of process the pleading must set forth ultimate facts establishing the following elements: (1) the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process, (2) the defendant had an improper purpose in exercising such alleged, perverted, or improper use of process; and (3) damages resulted. The term "use of process" refers to some wilful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. *See* full discussion in *Wells v. Orthwein*, 670 S.W.2d 529, 532–33 (Mo.App.1984); *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. banc 1979); *Guirl v. Guirl*, 708 S.W.2d 239, 245 (Mo.App. 1986); *see* cases collected in 34 Mo. D., *Process*, key no. 168.

As this court stated in *Guirl v. Guirl, supra*, 708 S.W.2d at 245: "The essence of abuse of process is not the commencement of an action without justification, but it is the misuse of process for an end other than that which it was designed to accomplish."

■ A careful reading of the asserted counterclaim for abuse of process for which leave to amend was sought shows that appellant averred that the goods were sold to Gail, that they were not necessaries, that he had no knowledge of or authorized credit, that Dillard "intentionally, willfully and maliciously pretextually caused process ... to be issued," that he disclaimed all debts, and that Dillard made an "illegal, perverted use of process." No facts were alleged tending to show that the action or process was either unwarranted, illegal or unauthorized, or that respondent had an improper purpose in exercising a perverted or improper use of process.

In fact, under the terms of the divorce decree, no such allegations stating all the essentials of an abuse of process claim could legitimately be made. By his own correspondence, attached as exhibits to his counterclaim and the payment of $900 to Dillard, appellant has, in effect, admitted that Dillard did not engage in the tort of abuse of process.

We therefore conclude that under the facts and circumstances, there was no abuse of discretion in denying appellant leave to amend his pleading to assert a counterclaim for abuse of process.

■ Whether the respondent's motion is denominated one for summary judgment or construed as a motion to dismiss, there were no facts stated to sustain all the elements of a claim for abuse of process, nor was there any genuine issue as to any material fact applicable to the purported claim, and the trial court did not err.

Appellant relies on several decisions: *Koller v. Ranger Insurance Co.*, 569 S.W.2d 372 (Mo.App.1978); *Dietrich v. Pulitzer Publishing Co.*, 422 S.W.2d 330 (Mo. 1968); *Boyd v. Kansas City Area Trans. Authority*, 610 S.W.2d 414, 417 (Mo.App. 1984) and *Young v. Stensrude*, 664 S.W.2d 263, 266 (Mo.App.1984). These decisions are either not controlling or distinguishable.

#### IV.

■ As to appellant's third point that the court erred in its order of October 14, 1988 denying leave to amend his counterclaim as to Count III to include a count for defamation, we conclude that the court did not err. A count in defamation was sought to be pleaded in appellant's asserted counterclaim filed on February 10, 1988. As we have held above, dismissal of this pleading was not an abuse of discretion. Thereafter, appellant sought leave to file such an amended counterclaim which included the alleged actions of abuse of process and defamation and was granted leave to do so by a visiting judge. The trial judge rescinded such order on August 9, 1988, and "held for naught" the filing of the counterclaims. Then, Dillard filed its second motion to dismiss, and sought sanctions and a protective order. On October 14, 1988, the trial judge then dismissed Count III, the defamation count, and set the cause for trial.

Under these peculiar circumstances, and the actions and conduct of appellant, we find no abuse of discretion in dismissing the defamation Count III on October 14, 1988.

■ In any event, Count III of the counterclaim averring that (a) Dillard and Gail, jointly and severally, published false computer tapes and computer printouts to the public which were defamatory, (b) Dillard indicated that appellant was, "directly or in substance," indebted to plaintiff, (c) appellant refused to pay a debt on time, (d) he breached a contractual obligation, and was not a good credit risk, and (e) his reputation as an attorney was disparaged so that his credit was damaged—failed to state the essential facts for a claim in defamation.

Under Missouri law, it is required that in actions of libel and slander, the petition must set forth the words, statements or language for which the plaintiff claims damages. It is not sufficient to generally allege false and allegedly untruthful reports reflecting upon the plaintiff's reputation or integrity. General allegations of circulating false or untruthful reports are insufficient. *See Bremson v. Kinder-Care Learning Centers, Inc.*, 651 S.W.2d 159, 160 (Mo.App.1983); *Remmers v. Remmers,*

217 Mo. 541, 117 S.W. 1117, 1123 (1909); *Fritschle v. Kettle River Co.*, 346 Mo. 196, 139 S.W.2d 948, 949 (1940); *Shurn v. Monteleone*, 769 S.W.2d 188 (Mo.App.1989).

## V.

Respondent has moved that sanctions in the form of damages be imposed upon appellant for filing frivolous and meritless pleadings in the trial court and for a frivolous appeal. In view of the total record, we unanimously agree that sanctions in the form of damages should be imposed upon appellant in his dual capacity as a party and as an attorney.

This cause began as a simple one for the price of goods sold and delivered for which, under several theories, appellant was liable therefor. From this simple beginning, appellant has turned the cause into a complex one by filing, or attempting to file counterclaims, and other papers on several, legally indefensible, legal theories.

Moreover, while we have found no abuse of process on the part of respondent, we find that appellant's actions in repetitively filing frivolous counterclaims seeking large damages warrant the imposition of sanctions pursuant to Rule 55.03. Furthermore, his argument before this court—that Dillard should have sued as a third-party beneficiary of his contract with his wife, but Dillard's allegation that he failed to pay his own debt constitutes an abuse of process and is defamatory—is so frivolous as to warrant the assessment of damages under Rule 84.19.

From the record presented to us we are unable to determine whether or not the account with Dillard's was titled in the customary husband and wife style or was in the wife's name alone. Under the facts of this case the names on the account, as well as whether the purchases were for necessaries or not, are irrelevant. By contract and by final judgment of the circuit court of St. Louis County the obligation to pay the debt to Dillard's was appellant's obligation, and his alone. The meritless nature of his allegations is established by his own letters attached to his pleadings. The conclusion is inescapable that appellant is using the process of the court in order to evade or delay the payment of an indebtedness which he owes by contract and by judgment. As an attorney he has, with little cost to himself, imposed considerable expense upon respondent by his repetitious assertions of claims which are, on the face of his pleadings, devoid of merit.

In recent years there have been numerous developments, by both the legislature and the courts, to curtail the litigation explosion and to curtail overzealousness or the inappropriate utilization of procedural devices in both trial and appellate courts to stem the tide of that explosion. These developments have sought to curtail frivolous or meritless claims, pleadings, motions or the filing of other papers by parties or their counsel. In recent years much has occurred to keep the procedural aspects of litigation and the judicial process within reasonable bounds. Traditional, and centuries old, fundamental values and rules have been emphasized by the judiciary in an attempt to obtain a smoother functioning of the judicial process, eliminate unnecessary and prolix "war of paper," avoid harrassment and reduce or eliminate costs and expensive attorney's fees. In recent years there have been dramatic developments in both the federal and Missouri systems to attempt to achieve these goals, and in both systems, authority exists to impose sanctions upon both a party to litigation and counsel. Under our present statutes and Rules, sanctions are authorized.

The General Assembly has reacted to the filing of frivolous causes, pleadings, motions or defenses by providing that a party may be held responsible for "reasonable expenses", "attorney's fees" and "compensation" for the time it takes to oppose frivolous causes, pleadings or motions. This provision is applicable to any civil action or part of a civil action pending before any division of any court. Section 514.205, R.S.Mo., 1986.

Recently, our Supreme Court adopted Rule 55.03, effective July 1, 1986. That Rule provides that if a pleading, motion or other paper is signed by an attorney in

violation of the Rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it an appropriate sanction, which may include an order to pay to the other party, the amount of the reasonable expenses incurred, including a reasonable attorney's fee. Rule 55.03 was borrowed from the amended Rule 11, Federal Rules of Civil Procedure. The revised federal rule demonstrated concern about lawyer irresponsibility and 'our Supreme Court, in following the federal Rule, directed its attention to the same problem. *See State ex rel. McMullin v. Satz*, 759 S.W.2d 839, 841 (Mo. banc 1988), Blackmar, J., dissenting. Rule 55.03 applies to cases in the court of appeals. *Id.*

Rule 55.03 is substantially the same as Federal Rule 11, and it is appropriate to look to that provision for construction. *State ex rel. Kincannon v. Schoenlaub*, 521 S.W.2d 391, 394 (Mo. banc 1975). Rule 11, effective in 1983, authorizes the imposition of sanctions against a party or an attorney for filing pleadings, motions or other papers which are not filed in good faith or are not well grounded in fact or warranted by existing law. *See* 2 A, J. Moore, *Federal Practice*, § 11.01[3] (1986); ABA Section on Litigation, *Sanctions, Rule 11 and Other Powers*, (1986); *Lupo v. R. Rowland and Co.*, 857 F.2d 482 (8th Cir.1988)—imposing sanctions on attorneys of $50,000.[2]

Further, Missouri Rule 84.19 provides that if an appellate court determines that an appeal is frivolous, it may award damages to the respondent as the court deems just and proper. Under Rule 84.19, there have been decisions assessing damages for a frivolous appeal. *See Johnson v. Schmidt*, 719 S.W.2d 825 (Mo.App.1986);

*Epstein v. Rochman*, 765 S.W.2d 312 (Mo. App.1988).

The purpose of all these recent developments is manifold: (1) to prevent the congestion of court dockets, with unmeritorious causes, pleadings, motions or other papers, (2) to prevent the filing of frivolous pleadings, motions or other papers, and (3) to compensate others for the delay, expense and harrassment of responding to a matter, cause, motion, pleading or appeal which is frivolous or meritless.

While we have no desire, nor would we construe the statutes and Rules, to chill any party from filing a legitimate claim, defense, legal theory, motion, pleading or other paper, nor would we chill an attorney's assertion of any legitimate, debatable legal theory, pleading or motion in zealously guarding the rights of a client, it is our duty to recognize and enforce the above recently enacted statutes and Rules aimed at discouraging the filing of meritless or frivolous matters.

We are, of course, sympathetic to the demands made on counsel and understand the importance placed upon a cause by a party, but all these new developments and rules are necessary, essential and salutary for the smooth functioning of the judicial process.

 This is a proper case, to affirm the sanctions imposed by the trial court, and for this court to impose additional sanctions upon appellant in the amount of $2,000.00, to be paid to respondent. We so do.

## VI.

Having disposed of the points raised by appellant on this appeal, we conclude that

---

**2.** *See also:* A. Levin and S. Sobel, *Achieving Balance in The Developing Law of Sanctions*, 36 Catholic U.L.Rev. 587 (1987); Note *Rule 11 Sanctions, Toward Judicial Restraint*, 26 Wash. L.J. 337 (1987) (Excellent); E. Cavanagh, *Developing Standards Under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L.Rev. 499 (1986); Note, *Risky Business: The Nuts and Bolts of Amended Rule 11(a)*, 19 Ariz. State L.J. 1456; Note, *Rule 11 Sanctions*, 46 Md.L.Rev. 470 (1987); Note, *The 1983 Amendments to Rule 11: Answering the Critics' Con-* cern with Judicial Self–Restraint, 61 Notre Dame L.Rev. 798 (1986); Note, *Litigant Responsibility: Federal Rule of Civil Procedure 11 And Its Application*, 27 Boston Coll.L.Rev. 385 (1986); M. Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in the Struggle Between Compensation and Punishment*, 74 Geo. L.J. 1313 (1986) with appendix of cases; Comment, *Good Intentions No Longer Good Enough in Missouri Courts*, 52 Mo.L.Rev. 417 (1987); S. Gray, *Sanctions Against Attorneys For Frivolous Filings*, 42 J. of Mo. Bar 391 (1986).

there was no error; hence the judgment is affirmed and sanctions imposed.

Judgment affirmed.

PUDLOWSKI, C.J., and CARL R. GAERTNER, J., concur.