Carney V. **FORSTHOVE** and Joe **Forsthove** d/b/a **Forsthove Brothers and Farm Bureau Mutual Insurance Company, Plaintiffs,**

**Rupert N. Marks, Respondent, Defendant and Cross-Claim Defendant,**

v.

**HARDWARE DEALERS MUTUAL FIRE INSURANCE COMPANY, Appellant, Defendant and Cross-Claimant.**

No. 32453.

St. Louis Court of Appeals.

Missouri.

April 18, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied May 18, 1967.

Application to Transfer Denied July 10, 1967.

Ben Ely, Ely & Cary, Hannibal, for defendant-appellant.

J. Andy Zenge, Jr., Canton, for plaintiffs.

Richard J. De Coster, Canton, Thomas R. McGinnis, St. Louis, Carson, Inglish, Mon-

aco & Coil, Jefferson City, for defendant-respondent.

RUDDY, Judge.

This appeal arises out of an interpleader action wherein Carney v. Forsthove and Joe Forsthove (hereinafter referred to as the tort-feasors) and Farm Bureau Mutual Insurance Company, tort-feasors' insurer, were plaintiffs and Hardware Dealers Mutual Fire Insurance Company (hereinafter referred to as Hardware Dealers) and Rupert N. Marks (hereinafter referred to as Marks), Hardware Dealers' insured, were joined as defendants. The trial court sustained a motion of Marks to dismiss the interplea and cross-claim of Hardware Dealers and to pay to movant the balance of the interpleaded fund held in the Registry of the Court. Hardware Dealers appealed.

We must look to the pleadings for all of the facts. The facts, as gleaned from the allegations contained in the bill of interpleader, the answer of Marks and the answer and cross-claim of Hardware Dealers, show that Hardware Dealers had issued to Marks a policy of liability insurance covering an automobile in which the wife of Marks was riding at the time said automobile was involved in a collision with a motor vehicle operated by one of the tort-feasors. The wife of Marks sustained injuries in this collision from which she died. The liability insurance policy issued by Hardware Dealers to Marks contained certain medical payment provisions. Under these provisions Hardware Dealers agreed to pay all reasonable medical expenses incurred within one year from date of accident. The "named insured" included the wife of the insured and the policy provided that "the term medical expenses included funeral expenses." The liability insurance policy of Hardware Dealers also included a provision that if payment be made for medical expenses as defined in the policy Hardware Dealers should be subrogated to any right of the person to whom such payment was made against any third party causing such injuries or death and that such payee should execute to the Hardware Dealers all necessary assignments and transfers of such subrogated rights. As stated heretofore, the wife of Marks was killed as a direct result of a collision with a motor vehicle owned and under the control of the tort-feasors. The funeral bill of the wife of Marks amounted to $1500 and Marks made a claim against Hardware Dealers under the medical expense clause of the policy for that amount. Hardware Dealers paid to Marks the sum of $1500 and demanded that he execute and deliver to it a written assignment and subrogation receipt transferring and assigning to it the rights he had against the tort-feasors. This demand was made pursuant to the terms of said subrogation provision, but Marks failed and refused to make any such assignment.

Marks instituted a cause of action in the Circuit Court at Canton, Missouri, against the tort-feasors under the Missouri Wrongful Death Act to recover for the death of his wife. The Farm Bureau Mutual Insurance Company was the liability insurance carrier on the motor vehicle involved in the accident which was owned and controlled by the tort-feasors at the time of said accident. The Farm Bureau Mutual Insurance Company as the insurer of the tort-feasors entered into a compromise settlement with Marks wherein it was agreed that Marks should receive $19,-500 in full settlement of the lawsuit and of any and all claims which he had or might have had growing out of his wife's death. Hardware Dealers served a lien notice upon the tort-feasors and the Farm Bureau Mutual Insurance Company claiming certain subrogation rights and that it was entitled to $1500 of any money or monies which the tort-feasors and their insurer became obligated to pay or agreed to pay to the said Marks.

The tort-feasors and Farm Bureau Mutual Insurance Company alleged in their bill of interpleader that it has been impossible

for them to obtain a release from Marks without paying the full sum of $19,500 and that if such payment is made Hardware Dealers will assert an additional claim for $1500 against them. As a result of the impasse reached, because of the divergent positions taken by Marks and Hardware Dealers, this bill of interpleader was filed by the tort-feasors and their insurer wherein $19,500 was paid into the Registry of the Court. Plaintiffs in their bill of interpleader pray that Marks and Hardware Dealers be required to interplead and that the court determine which of the defendants is entitled to receive payment of the $1500.

Marks, in his answer to the bill of interpleader, inter alia, alleged that he agreed to accept the sum of $19,500 " * * * in full settlement of all claims which said Rupert M. Marks * * * has or might have against * * * " said tort-feasors and their insurer.

Hardware Dealers, in its answer to the bill of interpleader, inter alia, alleged the following:

"The above mentioned terms of said policy and the demand for payment and the receipted payment thereunder constituted an equitable assignment to this defendant of the claim of said Rupert M. Marks against the plaintiff up to the said sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars, and this defendant became and is subrogated to the rights of said Rupert M. Marks against the plaintiff to the extent of the said One Thousand Five Hundred and No/100 ($1,500.00) Dollar payment."

In Count I of its cross-claim Hardware Dealers alleged that if the court should hold that it is not entitled to impress any lien or constructive trust upon the fund in court, that it is " * * * entitled to restitution on said sum of One Thousand Five Hundred and No/100 ($1,500.00) Dollars so paid by it * * * " to Marks as money had and received.

In Count II of its cross-claim Hardware Dealers alleged that it has " * * * done and performed all things to be done and performed by it under the terms of the said contract" of insurance; and by reason of the breach of said contract by Marks it has been injured and has suffered damages in the sum of $1500 and prays judgment for this amount in the event the trial court should hold that it is not entitled to a lien upon the fund paid into the court.

After Hardware Dealers' cross-claim was filed, Marks filed a motion " * * * to dismiss the cross-claim of Hardware Dealers Mutual Fire Insurance Company * * *." The ground given by Marks in said motion is that the cross-claim fails to state a claim for which relief can be granted. In the motion to dismiss Marks asked, in the alternative, for a judgment in favor of him directing

" * * * the Clerk of this Court to pay out the balance of the money held in the Registry of this Court, heretofore deposited by the plaintiffs in this action, for the reason that under the law and the pleadings filed herein, defendant Rupert M. Marks * * * is entitled to all of said money."

The trial court sustained said motion and dismissed both counts of the cross-claim of Hardware Dealers with prejudice for the reason that said cross-claim failed to state a claim for which relief could be granted and entered judgment in favor of Marks " * * * as prayed for in the separate answer of said Rupert M. Marks * * * " and ordered the balance of the funds held in the Registry of the Court paid to Marks. It appears that at the time this order and judgment was entered only $2000 of the $19,500 paid into the Registry of the Court remained for distribution.

We point out that the liability insurance policy issued by Hardware Dealers to Marks which contained the medical payment provision referred to herein was not filed as an exhibit in the interpleader ac-

tion, nor was the petition filed by Marks against the tort-feasors under the Missouri Wrongful Death Act filed in this action as an exhibit. We agree with the statement of Hardware Dealers in its brief that the present state of the record is most unsatisfactory for the purpose of presenting to this court the issues here involved. However, as Hardware Dealers points out, it is its desire to have this case decided on the merits and we think the record discloses sufficient facts to understand the positions taken by the respective parties.

It is the contention of Marks that the subrogation provision of the policy issued by Hardware Dealers to him involved a purported assignment and transfer to Hardware Dealers of his cause of action for personal injury against third party tort-feasors and that such is prohibited by the law of this state, citing Travelers Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418. Marks relies on the reasoning of the rule announced in the Chumbley case, that even though the cause of action for personal injuries may survive, still such action may not be assigned either in whole or in part prior to judgment for reasons of public policy and contends that the fact that the purported assignment in the instant case was not used until after the money had been paid in the court or the fact that the cause of action in the instant case was for wrongful death, rather than for personal injury, does not distinguish the present case from the Chumbley case.

Hardware Dealers in its brief admits that the trial court's decision was based entirely on the opinion rendered in Travelers Indemnity Co. v. Chumbley, supra. After paying great respect to the author of the opinion and the court out of which it came, a tribute in which we join, it contends that the reasoning is anachronistic and the conclusion reached in the opinion is unsound in holding that a cause of action for a personal tort could not be assigned. Hardware Dealers calls upon us to adopt the rule followed in some jurisdictions, which hold that

there is no sound reason of public policy prohibiting the making of subrogation contracts and rejecting the supposed doctrine of the common law forbidding the assignment of claims for personal torts. In support of its effort to have us reject the reasoning and the rule set out in the Chumbley case, Hardware Dealers has cited the following cases: Davenport v. State Farm Mutual Auto Insurance Company, 81 Nev. 361, 404 P.2d 10; Damhesel v. Hardware Dealers Mutual Fire Ins. Co., 60 Ill.App.2d 279, 209 N.E.2d 876; Michigan Medical Service v. Sharpe, 339 Mich. 574, 64 N.W. 2d 713; Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7; Smith v. Motor Club of America Ins. Co., 54 N.J. Super. 37, 148 A.2d 37. We have examined the aforesaid authorities cited by Hardware Dealers and many other authorities in our independent research. We need not comment on the cases of these other jurisdictions which have adopted a rule contrary to ours because we feel bound to follow the reasoning and rule announced in the Chumbley case for the reasons hereinafter noted. If the reader is interested in the rule and cases in other jurisdictions as to the assignability of claims for personal injury or death he is referred to the annotation on that subject in 40 A.L.R.2d 500–519 and Vol. 4 Later Case Service for 32–48 A.L.R. 2d.

In the Chumbley case Travelers, the insurer, filed an action against its insured and the tort-feasor to recover under the subrogation provisions of its policy the medical payment of $500 it made to its insured. Chumbley, Travelers' insured, instituted a personal injury action against Losinsky, the tort-feasor, which was settled and the lawsuit was dismissed by Chumbley with prejudice pursuant to stipulation. The subrogation clause of the policy in question provided that " * * * the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights * * * " the insured shall have against the tort-feasor. The opinion held that Travelers' status, in legal effect, was

that of an assignee of a portion of Chumbley's cause of action for personal injury. In discussing the question as to whether Chumbley's right to recover against Losinsky for medical expenses, which the court said was embraced in, and was a part of, Chumbley's cause of action for personal injuries, was assignable, the Court said: (394 S.W.2d 1. c. 423)

" * * * Although there is no specific admission by plaintiff Travelers that a cause of action for personal injury is not assignable in Missouri, there is no contention to the contrary by counsel, and their earnest effort to persuade us that a claim for medical expense 'is separate and apart from a bodily injury claim' strongly suggests recognition of the nonassignability of a cause of action for personal injury. However, we hasten to add that we rest our conclusion to that effect (i. e., that a cause of action for personal injury is not assignable) upon the case law in Missouri and not upon so frail a foundation as the implied concession of counsel. If (as we have determined) Chumbley's cause of action for personal injury, which embraced and included his right to recover his medical expenses, was not assignable, it necessarily follows that the purported assignment of such right of recovery by paragraph 15 of the policy 'conditions' was of no validity and effect. * * * "

The court in footnote 12 cited the following cases in support of the above statement: Kramer v. Laspe, Mo.App., 94 S.W.2d 1090, 1094(7); Beechwood v. Joplin-Pittsburg Ry. Co., 173 Mo.App. 371, 375–377, 158 S. W. 868, 869–870(2); McLeland v. St. Louis Transit Co., 105 Mo.App. 473, 473–478, 80 S.W. 30, 31(1); Schubert v. Herzberg, 65 Mo.App. 578, 584; and, Freeman v. Berberich, 332 Mo. 831, 847, 60 S.W.2d 393, 401, 1. c. 423. The court held that the nonassignability of Chumbley's cause of action for personal injury, which embraced and included his right to recover his medical expenses, was dispositive of the appeal as to Losinsky and, therefore, affirmed the trial

court's action dismissing Travelers' first amended petition as to both defendants. We note that the Chumbley opinion does not directly say that the rule is bottomed on public policy.

We realize that we are not absolutely bound to follow the reasoning and the rule followed by the Springfield Court of Appeals in its opinion in the Chumbley case if in fact it is not in accord with the case law of this state, especially as ruled in the decisions of the Supreme Court of this state. If the case law decided by the Supreme Court of this state supports the rule followed in the Chumbley case then we are absolutely bound by the rule followed in that case. If the rule finds no support in the Supreme Court decisions and only finds support in the decisions of the Courts of Appeal of this state, then the rule is not binding on this court and, at most, these decisions are only persuasive.

We admit that in a number of cases decided by the Supreme Court the court said that the test of assignability of causes of action is whether or not the cause of action survived to the personal representative. However, all of the cases in which this declaration has appeared have arisen from torts affecting property and as far as we can determine the test of survivability has never been applied in this state in a case arising from a tort based upon wrongful or negligent acts resulting in personal injury.

While we have been unable to find a case decided by the Supreme Court of this state, with the precise factual situation appearing in the Chumbley case and in the instant case under review, we are not without Supreme Court authority on the question.

In the case of Remmers v. Remmers, 217 Mo. 541, 1. c. 560–561, 117 S.W. 1117, 1. c. 1122, decided March 30, 1909, which was an action for conspiracy to cheat and defraud plaintiff of property, the court said:

"The rule of the common law that no cause of action in tort, whether to person or property, could be assigned, has been

very much relaxed, and the *distinction* is now marked between rights of action for tort affecting the person or family relations, and those affecting property.

" * * * 'It is now the general American doctrine that all causes of action arising from *torts to property, real or personal—injuries to the estate by which its value is diminished—do survive* and go to the executor or administrator as assets in his hands. As a consequence such choses in action, although based upon a tort, are assignable.' " (Emphasis ours.)

It will be noted that the above merely holds that torts to property, real or personal, are assignable, but infers that they are to be distinguished as to assignability from rights of action for torts affecting the person.

In the case of Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, the Supreme Court pointedly said that a tort action based upon wrongful or negligent acts resulting in personal injuries was not assignable. The action was for damages for personal injuries sustained by plaintiff when the automobile in which he was riding, driven by one of the defendants, collided with a truck owned by defendant Berberich. In a discussion on whether the "dead man's statute" disqualified one defendant from testifying when the agent of the co-defendant was dead, the Court said at l. c. 401,

" * * * This idea is further emphasized by the amendment of 1887 disqualifying the other party to the contract or cause of action from testifying 'in favor of any party to the action claiming under him' and also disqualifying a party to the suit whose action or defense is derived from one subject to the disqualification. These provisions would seem to indicate that the cause of action spoken of there, at least, is an assignable or transmissible cause of action, *and not a pure tort based upon wrongful or negligent acts resulting in personal injuries, which is not assignable.* See Remmers v. Remmers, 217 Mo. 541, loc. cit. 561, 117 S.W. 1117; Snyder v. Railroad [Wabash, St. L. & P. Ry. Co.], 86 Mo. 613; Beechwood v. Railroad [Joplin-Pittsburg Ry. Co.], 173 Mo.App. 371, 158 S.W. 868, and cases cited. * * *" (Emphasis ours.)

The case of State ex rel. Park National Bank v. Globe Indemnity Co., 332 Mo. 1089, 61 S.W.2d 733 (1933) was a suit upon a notary public's bond. The suit was brought by the State at the relation and to the use of the Kansas City Title and Trust Company and later was assigned to the Park National Bank. The defendants contended that the cause of action was not assignable by the Kansas City Title and Trust Company. The Supreme Court held that the right of action on a notary's bond of the Kansas City Title and Trust Company was assignable. In approving the assignability of the claim the Supreme Court quoted approvingly from 2 Ruling Case Law. It said: (1. c. 736)

"The matter is summed up as follows, in 2 R.C.L. 596, § 3: 'Although at common law no action ex delicto in which the appropriate plea was "not guilty" survived, the early statute of 4 Edw. III, c. 7 gave a remedy to executors for a trespass to the personal estate of their testators, which remedy by equitable construction was extended to administrators, and ultimately gave rise to the principle that choses in action for torts may be assigned, *provided they arise from wrongs causing injury to real or personal property,* or from frauds, deceits and other torts by which an estate, real or personal, has been injured, diminished, or damaged. This class of assignable choses in action for torts includes rights of action to recover for the wrongful taking and conversion of personal property. The assignability of things in action is now the rule and non-assignability the exception. *Practically the only classes of choses in action which are not assignable are those for torts for personal injuries,* and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a

purely personal nature, such as promises of marriage.' See, also, 5 C.J. 886–890, §§ 52–55." (Emphases ours.)

It is clear beyond doubt that the Supreme Court in quoting approvingly from the rule stated in 2 Ruling Case Law and in its own noted exceptions to the general statement contained in the rule, has held that choses in action for torts for personal injuries, actions based upon a purely statutory right conferred on one who belongs to a particular class and is in the nature of a personal privilege, and actions for fraud or deceit in which the wrong is regarded as one to the person, are not assignable.

Another case, Beall v. Farmers' Exchange Bank of Gallatin, Mo., 76 S.W.2d 1098 was a suit on notes in which it was alleged that the cashier of the defendant bank had practiced a fraud on the Winston Bank at Winston, Daviess County, Missouri. Defendants contended that the Winston Bank had no right to assign the cause of action to the plaintiff because it was an action for fraud and deceit which they contended was not assignable. The Supreme Court held that the contention that the action was not assignable was without merit and stated that the rule applicable was approved and applied recently by the Supreme Court in the case of State ex rel. Park Nat. Bank v. Globe Indemnity Co., 332 Mo. 1089, 61 S.W.2d 733. The court said l. c. 1099, 61 S.W.2d l. c.:

"* * * In that case the following passage from 2 R.C.L. 596, § 3, was approved:

" 'Practically the only classes of choses in action which are not assignable are those for torts for personal injuries, and for wrongs done to the person, the reputation, or the feelings of the injured party, and those based on contracts of a purely personal nature, such as promises of marriage.' "

Rather than paraphrase we have quoted quite fully from the aforementioned Supreme Court cases because of Hardware Dealers' insistence that we not adhere to the rule of nonassignability of personal injury actions. The aforesaid quotations from the Supreme Court cases show beyond question the position of the Supreme Court on the rule, a position we must follow. In these cases, while the Supreme Court has steadfastly held to the rule of nonassignability of personal injury actions based on a tort, it has not discussed its reason or reasons for so holding. Obviously, its reason for its pronouncement of the rule is not the nonsurvivability of personal injury actions after the death of the injured party, because, since 1907 (Laws of Missouri 1907, page 252, now part of Section 537.020(1) RSMo 1959, V.A.M.S.) causes of action for personal injury, other than those resulting in death, where suit had been brought by the injured party during his lifetime, after his death survived to the personal representative of the injured party. All of the Supreme Court cases we have cited were decided since 1907. What then is the reason for nonassignability of personal injury actions? It must be because of consideration of public policy. It was so held in the case of Beechwood v. Joplin-Pittsburg Ry. Co. (1913), 173 Mo. App. 371, 158 S.W. 868. In that case plaintiff, C. E. Beechwood, instituted suit against defendant to recover damages for personal injuries. Subsequently plaintiff was adjudged a bankrupt and the trustee of his bankrupt estate filed a motion in his suit for damages asking to be substituted as party plaintiff in place of said Beechwood. The trial court sustained this motion but on appeal the court found that the trial court erred in sustaining the motion to substitute the trustee in bankruptcy as party plaintiff. The court on appeal held that it is well established that a cause of action for personal injury is not assignable and when the injuries are sustained by the bankrupt prior to the bankruptcy the cause of action does not vest in the trustee in bankruptcy of the injured party. Among

the cases cited in support of this was Schubert v. Herzberg, .65 Mo.App. 578. In the Beechwood case the court also said:

"* * * See, also, North Chicago Street R. Co. v. Ackley, 171 Ill. 100, 49 N.E. 222, 44 L.R.A. 177, and the annotation thereto, where a large number of cases from all the states upholding this *doctrine is collected.*"

The court then said (1. c. 870):

"There is every reason for holding that a cause of action for personal injuries, where the gist of the damages recovered is physical pain and mental anguish, should not be the subject of barter or trade, or a matter of profit to the creditors of the injured party. With reference to the very matter now at issue, it is said in Sibley v. Nason, 196 Mass. 125, 130, 81 N.E. 887, 889, 12 L.R.A. (N.S.) 1173, 124 Am.St.Rep. 520, 12 Ann.Cas. 938, as follows: 'It is not, and never has been, the policy of the law to coin into money for the profit of his creditors the bodily pain, mental anguish, or outraged feelings of a bankrupt. None of the federal or English bankruptcy acts, nor our own insolvency statutes, have gone to that length.'

* * * * * *

"The question presented by this appeal as to what effect a statute similar to our Section 5438, (Laws of Missouri 1907, p. 252, Section 537.020 RSMo 1959) providing for the survival to the personal representative of causes of action for personal injuries on the death of the person injured, has as to making such causes of action assignable, and therefore vesting in the trustee in bankruptcy, has been considered by the courts of other states, and answered in the negative. The Illinois case of North Chicago Street R. Co. v. Ackley, (supra) holds that a statute of that state more comprehensive than ours in providing for the survival of such causes of action, does not have the effect of making caus-

es of action for personal injuries assignable, or of vesting title to the same in a trustee in bankruptcy. The court there remarked: 'On grounds of public policy, the sale or assignment of actions for injuries to the person are void. The law will not consider the injuries of a citizen, whereby he is injured in his person, to be, as a cause of action, a commodity of sale.' * * *"

The court in the Beechwood case also quoted from the case of Weller v. Jersey City, H. & P. St. Ry. Co., 68 N.J.Eq. 659, 61 A. 459, to the same effect.

In the case of Schubert v. Herzberg, 65 Mo.App. 578, cited in the Beechwood case, the court said:

"* * * Unless otherwise provided by statute, it is everywhere conceded that a mere claim of damages for personal tort is, at law, nonassignable. It is only when such a claim becomes merged in a judgment, establishing the right to a definite amount that it can be the subject of legal sale and transfer. * * * In so far, then, as the assignment pretended to transfer the cause of action, it was clearly of no validity. * * *"

This court in the case of Kramer v. Laspe, (1936) Mo.App., 94 S.W.2d 1090, 1094, said:

"Whether the assignment of the judgment herein be viewed as an assignment of plaintiff's cause of action or not is of no moment, since it is no longer open to question but that a cause of action for personal injuries is not assignable in this state, and any such attempted assignment is invalid. 'Unless otherwise provided by statute, it is everywhere conceded that a mere claim of damages for a personal tort is, at law, unassignable. It is only when such a claim becomes merged in a judgment, establishing the right to a definite amount that it can be the subject of legal sale and transfer. * * * In so far, then, as the assignment pretended to transfer the cause of

action, it was clearly of no validity. * * *'"

In addition to the Illinois case of North Chicago Street R. Co. v. Ackley, supra, cited and quoted from approvingly in the Beechwood case, we find support for the rule under review in the very recent case (1966) of Harleysville Mutual Insurance Company v. Lea, 2 Ariz.App. 538, 410 P.2d 495. In that case the insurer brought action against the insured for the amount of medical payments which insurer had made to insured on the ground that the insurer was entitled to reimbursement under subrogation clauses of the policy and the receipt signed by the insured. The insured entered into a settlement with the tortfeasor and refused to reimburse the insurance company to the extent of the medical benefits previously paid to the insured by the insurer. In a well written opinion that indicated much research the court said: (l. c. 498)

"At common law, a chose in action for personal injuries could not be assigned and would not survive. Most writers objected to the assignability because they felt that unscrupulous people would purchase causes of action and thereby traffic in law suits for pain and suffering. Rice v. Stone, 83 Mass. 566 (1861). * * *"

The court held that the view that a statute which provides for the survival of a cause of action of necessity authorizes the assignment of said cause has been rejected in a number of jurisdictions, citing cases. The court then said:

" * * * We feel and therefore hold, that the better reasoned rule is that even though a cause of action for personal injury may survive, an action still may not be assignable either in whole or in part prior to judgment. * * *"

Thereafter the court quoted approvingly from the case of Travelers Indemnity Company v. Chumbley, Mo.App., 394 S.W.2d 418. The court then said: (l. c. 499)

"Although the historical reasons given for the non-assignment of a personal injury claim have been based mostly on the nonsurvivability of the cause of action, we believe that the non-assignability rule standing alone has much support in public policy. * * *"

Supporting the rule followed in the Chumbley case, in addition to the aforesaid authorities, are the cases of City of Richmond v. Hanes, 203 Va. 102, 122 S.E. 2d 895; Bethlehem Fabricators v. H. D. Watts Co., 286 Mass. 556, 190 N.E. 828, 93 A.L.R. 1124; Goldfarb v. Reicher, 112 N.J.Law 413, 171 A. 149; and Weller v. Jersey City, H. & P. St. Ry. Co., 68 N.J. Eq. 659, 61 A. 459.

We reject the rule urged by Hardware Dealers that whether a cause of action for personal injury is assignable depends solely upon whether it survives and adopt the rule that such causes of action may not be assigned prior to judgment for reasons of public policy. We think the case law as given to us by the Supreme Court of this state dictates this course, a course we would willingly follow even though there were no such case law. We think the reasons for the applicability of such a public policy are as fundamental and as necessary today as in the days of the origin of this rule. We do not think economic or social changes since its origin make the reasons for this humane rule anachronistic.

However, Hardware Dealers, clinging to its concept of what the rule should be, says that the Missouri cases relied on by us and in the Chumbley case were decided prior to 1947, (which is true) and that prior to 1947 only causes of action for personal injury survived the death of the victim, " * * * if, but only if, the victim before his death had brought suit and the suit was actually pending at the moment of his death. Laws 1907, p. 252. * * *" Hardware Dealers then points out that in 1947 the Legislature adopted the present form of Section 537.020 RSMo

1959, V.A.M.S. (Session Acts 1947, Vol. 11, p. 225.), which provided that causes of action for personal tort survived the death of the tort-feasor against his personal representative and also, after the death of the victim, survived to his personal representative, whether or not action had been instituted by the victim before his death. As will be recalled we pointed out that since 1907 only causes of action for personal injury where suit had been brought by the injured party during his lifetime survived to his personal representative after his death. Hardware Dealers contends that the 1947 Legislation constituted a declaration by the Legislature that modern public policy is not opposed to the assignability of such a cause of action. We do not agree with Hardware Dealers in this contention. The Legislature made no declaration as to assignability of personal injury actions and consequently did not declare any public policy as to these actions. We agree with Marks' position that the amendment to Section 537.020 in 1947 only added to the situations and conditions of survivability and that it did not initially provide for survivability. This had been done initially in 1907 (Laws of Missouri 1907, p. 252). As we have pointed out heretofore in the Beechwood case, reference was made to the case of North Chicago Street R. Co. v. Ackley, (supra) where the statute involved was more comprehensive than ours in providing for the survival of causes of action for personal injuries and in that case, despite the broadened scope of survivability, the court held that causes of action for personal injury were not assignable.

Hardware Dealers in another contention assumes a different tack. It says in the instant case, unlike the Chumbley case, we are not dealing with a transfer of the power to sue a tort-feasor, pointing out that the suit has already been ended and that the third party tort-feasor has paid the money into the Registry of the Court. It says that a judgment actually rendered for personal tort may be assigned by the judgment plaintiff to a stranger and that such an assignment is valid even though it is actually executed before the rendition of the judgment. It says the present case is completely analogous to the contention submitted. It is true that some Missouri cases hold that a judgment for personal tort is assignable. The obvious answer to this contention of Hardware Dealers is that there was no judgment and that there was no purported assignment of any judgment or of any money which had been paid into the Registry of the Court. The subrogation provision in the policy does not attempt to assign a judgment or the proceeds from a settlement. The provision merely attempted to assign a cause of action for personal injury which we have found to be nonassignable.

In another contention Hardware Dealers urges that the present case deals with a cause of action for wrongful death which is more closely analogous to a cause of action for property damage than to one for personal injury. In the case of Hildreth v. Key, Mo.App., 341 S.W.2d 601, the court held that burial, hospital, medical and ambulance expenses incurred in a wrongful death action were general damages. Therefore, funeral expenses can not be categorized as analogous to an action to recover special property damage. We admit that causes of action for property damages have been assignable in Missouri. General Exchange Ins. Corp. v. Young, 357 Mo. 1099, 212 S.W.2d 396. A cause of action for wrongful death conferred by the statute sounds in tort and it is well settled that the cause of action or right to maintain an action and recover for a wrongful death of any person is a single right and the right is vested in specific beneficiaries. The cause of action for wrongful death accrues and passes in accordance with the statute. Spencer v. Bradley, Mo., 351 S.W.2d 202. In the absence of statutory permission a cause of action for death by wrongful act is not assignable and it has been held that prior to judgment the beneficiary's claim for

damages is a mere expectancy, or inchoate right, and not a debt and not assignable. 6 C.J.S. Assignments § 33, p. 1081; Clar v. Dade County, Fla.App., 116 So.2d 34; Liberty Mutual Ins. Co. v. Lockwood Greene Engineers, Inc., 273 Ala. 403, 140 So.2d 821. Also see other cases in 40 A.L. R.2d 500, 514, Section 9, wherein appears the following: "It seems well settled that, absent contrary statutory provisions, an individual who, under the applicable death statute, is authorized to bring an action to recover for a death may not assign to another his right to prosecute such action."

■ We now come to a discussion of Hardware Dealers' alternative claims, contained in its cross-claim, wherein it assumes, but does not admit, the invalidity of its claim under the subrogation clause. It says, notwithstanding the invalidity of its claim under the subrogation clause, it would be entitled to restitution of the money paid to Marks because the money was paid by it in reliance upon the validity of the subrogation provision in the policy. It argues that had it known of the invalidity of the subrogation clause as to assignments of personal injury claims, it would not have inserted the medical expense clause in its policy.

Its claim for restitution in Count I of its cross-claim is based on the ground of money had and received and in Count II on the alternative ground of breach of contract because of Marks' failure to execute and deliver to it a written assignment and subrogation receipt.

Initially, we point to Section 537.090 RS Mo 1959, 37 V.A.M.S. providing for the damages recoverable in a wrongful death action. The damages are limited to the pecuniary loss sustained which necessarily results from the death, to those entitled to recover. Caen v. Feld, Mo., 371 S.W.2d 209. The recovery is compensatory in nature and in the instant case Marks in his lawsuit could show anything, including funeral expenses, which would help the court or jury in determining his pecuniary loss. However, the statute limits recovery

to $25,000. This indicates that the statute did not intend to permit recovery for total pecuniary loss in all cases. In the instant case there is nothing in the record to show whether the lump sum settlement included all, part or any of the funeral expenses. As we have said before funeral expenses are not recoverable as special damages. The settlement was on a lump sum basis without apportionment of specific items of damage. Therefore, can it be reliably said that Marks recovered the funeral expenses from plaintiff in this action? However, we need not determine this because there are more cogent reasons for denying Hardware Dealers' claim of restitution.

■ An action for money had and received, although an action at law, is governed by equitable principles. Propst v. Sheppard, Mo.App., 174 S.W.2d 359, 362; 58 C.J.S. Money Received § 1, pp. 906, 907. Hardware Dealers' cross-claim has for its foundation the subrogation clause in its policy, contending it is entitled to restitution because of Marks' failure to execute and deliver to it a written assignment. We have shown such a subrogation clause is invalid as to assignment of personal injury claims or wrongful death actions. This would be true whether it is a conventional assignment or is founded on principles of equity. Aetna Casualty & Surety Co. v. Lindell Trust Co., Mo.App., 348 S.W.2d 558, 570. Subrogation is an equitable doctrine and is closely akin to, if not a part of, the equitable principle of restitution and unjust enrichment. 83 C.J.S. Subrogation § 2, pp. 580, 581. What Hardware Dealers is really attempting through its cross-claim is to obtain restitution through the subrogation provision of its policy. If we were to allow recovery through the circuitous route of restitution, we would, in effect, be approving the validity of the subrogation clause as to assignments of personal injury and wrongful death actions, at least the ultimate effect would be the same. Hardware Dealers paid the funeral expenses, not pursuant to the provisions of the subrogation clause, but pursuant to the medical payment provisions

of its policy. Heretofore, we have found the subrogation clause invalid insofar as it provides for assignment of all or part of Marks' cause of action against the tort-feasors for the wrongful death of his wife. In thus declaring the invalidity of this portion of the policy we merely have left an automobile liability policy with medical payment benefits and a policy shorn of any subrogation rights. Marks paid a premium for this policy and under the circumstances was entitled to the funeral expense payment, regardless of what further action he may have taken in bringing suit against the tort-feasors. The claim made by Marks for payment of the funeral expenses was an honest claim for the amount due under the provisions of the policy. In Restatement of the Law, Restitution, § 45, p. 184, it is said " * * * a person who, induced thereto solely by a mistake of law, has conferred a benefit upon another to satisfy in whole or in part an honest claim of the other to the performance given, is not entitled to restitution." Hardware Dealers was mistaken as to the validity of the subrogation clause. However, the claim made by Marks was an honest claim for an amount due under the provisions of the policy, but Hardware Dealers says that this provision in the Restatement of the Law is subject to exceptions and cites Section 47 at page 192 of the same authority. This section provides,

"A person who, in order to obtain the performance of a promise given or believed to have been given by another and in exchange therefor, has conferred upon the other a benefit other than the performance of services or the making of improvements to the land or chattels of the other, is entitled to restitution from the other if the transferror, because of a mistake of law,

(a) erroneously believed the promise to be binding upon him and

(b) did not obtain the benefit expected by him in return."

The obvious answer to this exception is that Hardware Dealers did not make pay-

ment under the medical provisions because of an erroneous belief of law. There was no mistake of law in this respect by Hardware Dealers. It was bound to make this payment under the provisions of the policy and was not mistaken as to the law. The only mistake of law made by Hardware Dealers was that concerning the validity of the subrogation provision and even if it would have determined before it made the payment that the subrogation provision was invalid, it could not have refused to make the payment of the funeral expenses under the other provisions of the policy.

It was said in Eichenberg v. Magidson's Estate, Mo.App., 170 S.W.2d 105 that a claim based on money had and received only lies where one person has received money belonging to another, which, for reasons of equity and good conscience, he ought to pay to the owner. As said in the Eichenberg case, " * * * the underlying theory is that the money, however received, *was received for the use of the plaintiff;* and unless the case is one where such a situation obtains, the particular action does not lie. * * *"

In 58 C.J.S. Money Received § 8, p. 919 it is said:

" * * * In order to sustain an action for money had and received, it must appear that the money in question belonged to plaintiff, that it was secured by defendant without plaintiff's consent, and without giving any valid consideration, * * *. It is immaterial how the money may have come into defendant's hands. The action does not lie unless the money was received for the use of plaintiff."

If Hardware Dealers had no cause of action or claim against the tort-feasors, how can it be said that Marks had money belonging to Hardware Dealers and that it was secured by Marks without Hardware Dealers consent and was money received for the use of Hardware Dealers?

■ Hardware Dealers also says, if the subrogation provision is void, there has been

a substantial failure of consideration. In order to recover for this reason in an action for money had and received it must be shown that the consideration has wholly failed. Propst v. Sheppard, supra, 174 S. W.2d 1. c. 363; 58 C.J.S. Money Received § 5, p. 915. We point out that if there has been any failure of consideration it has been only partial. However, the consideration it refers to, namely, the subrogation provision, we have held to be invalid insofar as it attempts to assign the cause of action involved. It becomes evident from what we have said that Hardware Dealers' claim for restitution in Count I of its cross-claim based on the ground of money had and received must be denied.

 Count II of Hardware Dealers' cross-claim for restitution is based on Marks' alleged breach of contract because he failed to execute and deliver to it a written assignment and subrogation receipt. Restitution is held inexpedient when it is opposed to public interest. Restatement of the Law, Restitution, Topic 3, Mistake of Law, p. 179. Where the transaction on which the claim is based is illegal, the transferor (Hardware Dealers) is not entitled to restitution if the transferee (Marks) refuses to perform and again the transferor is not entitled to restitution if the basis of the claim is contrary to public policy. Restatement of the Law, Restitution, Chapter 47, pp. 193–194. We have held heretofore that the subrogation clause of the policy calling for the assignment and subrogation receipt was invalid because it was against public policy and, therefore, the same reason that would prevent subrogation and assignment of the claim would prevent invoking the kindred principle of restitution. The same reasons of public policy which make personal injury and wrongful death claims not assignable operate with the same effect against their transfer by so called subrogation and its kindred principle of restitution. Fifield Manor v. Finston, 54 Cal.2d 632, 7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813.

Finally, Hardware Dealers contends that if the subrogation provision is illegal it could not possibly have known of the illegality of the provision because the Chumbley case, supra, was not decided until long after its insurance contract was made. There is no merit to this contention because the Chumbley case was based on and supported by the case law we referred to, cited and quoted in the early part of this opinion, beginning with a case that was decided in 1909. The law in Missouri, as we have shown, has always been to the effect that a cause of action for personal injury and a kindred action for wrongful death has never been assignable in the state of Missouri and, therefore, Hardware Dealers knew or should have known that a policy provision like the one in question was void in this state. This principle of nonassignability was law even after the statute had been amended (1907) so that a cause of action for personal injury survived. No case in Missouri has ever held otherwise. Therefore, contrary to Hardware Dealers contention, the policy provision as to assignment was void under a rule of law long established when the insurance policy was issued. In Restatement of the Law, Restitution, § 44, p. 181 it is said: "A person who has paid money or otherwise conferred a benefit upon another induced thereto by a mistake of law is not entitled to restitution if he would not have been so entitled had the mistake been one of fact." Under the circumstances of this case, Hardware Dealers would not have been entitled to restitution whether this be a mistake of fact or of law. . There is no doubt that it was a mistake of law on its part and, therefore, not entitled to restitution. See illustration 2, Restatement of Law, Restitution, § 44, p. 182. It is quite apparent that Hardware Dealers assumed the risk of including this provision in its policy thinking that we would change the rule in Missouri as contended for in its brief. We are powerless to change the rule and must follow it as we find it to be in the case law decided by the Supreme Court of this state and, inasmuch as we find the law prohibits the assignment in question because

it is against public policy, Hardware Dealers should not now be heard to claim any equitable right including the right to restitution.

We have extended our opinion because of the vigor with which counsel for Hardware Dealers in his brief and in his oral argument has contended that the rule as found in the Chumbley case was not the law of the state of Missouri and that such a rule if followed is anachronistic and outmoded.

For the reasons we have given the judgment of the trial court should be affirmed and it is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.