August **TEGTMEYER** and Betty Tegtmeyer, Husband and Wife, and August Tegtmeyer, Next Friend of Lisa Tegtmeyer, a minor, Appellants/Respondents,

v.

Mark **SNELLEN** and Farmers Insurance Company, Respondents/Appellants.

No. WD 42205.

Missouri Court of Appeals,
Western District.

April 17, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application to Transfer Denied
July 31, 1990.

Erwin L. Milne, Jefferson City, for appellants/respondents.

Michael R. Baker, Susan Ford Robertson, Columbia, for respondents/appellants.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This appeal involves the construction of three automobile insurance policies issued to the Tegtmeyers by the Farmers Insurance Company. The Tegtmeyers (mother, father and daughter) were injured by Snellen who had motor vehicle liability coverage with the Auto Club for limits of $100,000/$300,000. The Snellen carrier paid $100,000 each to August and Betty Tegtmeyer, who brought this action to declare their three policies of $50,000/$100,000 with Farmers be stacked under provisions which made "uninsured" and "underinsured" coverage synonymous. The injuries to August and Betty appear to be very serious, and not so serious for their daughter, Lisa.

Both sides have appealed from a summary judgment which: 1) allowed stacking, 2) ruled the Tegtmeyers could not collect because they failed to comply with language requiring them to first obtain Farmers' written consent to settle with Snellen, and 3) found that any ultimate recovery under the stacked policies would be limited to $50,000 each for August and Betty.

The applicable policy language contained in the three contracts is now listed:

Uninsured motor vehicle means a motor vehicle which is:

a. Not insured by a bodily injury liability bond or policy at the time of the accident.

b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations.

\*   \*   \*   \*   \*   \*

If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability. This limitation does not apply to you or a family member.

\*   \*   \*   \*   \*   \*

Two or More Cars Insured

With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies

shall not exceed the highest applicable limit of liability under any one policy.

\*　　\*　　\*　　\*　　\*　　\*

This coverage does not apply to bodily injury sustained by a person:

1. If that person or the legal representative of that person makes a settlement without our written consent.

\*　　\*　　\*　　\*　　\*　　\*

When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment.

Additional facts will be supplied with the discussion of the three points.

### I.

■ Farmers had contested the court's judgment declaring the three policies could be stacked to determine the amount of coverage. This point is denied and the judgment on this issue is affirmed. This precise issue, on this very language has been previously determined in *Bergtholdt v. Farmers Insurance Co., Inc.,* 691 S.W.2d 357, 359 (Mo.App.1985); *Krombach v. The Mayflower Insurance Company, Ltd.,* 785 S.W.2d 728 (Mo.App.1990); and *Maxon v. Farmers Insurance Co., Inc.,* 791 S.W.2d 437 (Mo.App.1990). In these decisions, this court and the eastern district have held where the contract language chosen by the insurer, Farmers, treats "underinsured" and "uninsured" coverage as being one and the same, coupled with the prior case law announced in *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976), which prohibits anti-stacking language, the end result is the coverage is deemed to be uninsured and the policies may be stacked.

### II.

■ The court's conclusion of an exclusion of coverage because a) the insured failed to obtain consent before settling with Snellen's company and, b) because Farmers did not unreasonably withhold consent, is an incorrect application of the law.

The policies exclude coverage if the insured "makes a settlement without our written consent." The accident happened in November, 1986. The Tegtmeyers' attorney began negotiations with Sellen's carrier the following November. On December 4, 1987, their attorney, Milne, sent a demand letter to Farmers in which he expressed a desire to reach a settlement with the Auto Club by January 1, 1988. Milne wrote to Farmers on January 13, 1988 asking for consent to settle August's and Betty's cases with the Auto Club for the $100,000 limits. The Auto Club issued the two $100,000 drafts on January 28th. Farmers wrote to Milne on February 8th stating it could not consent to the settlement. Milne asked for an explanation for the denial of consent on February 26th, and, on March 7, 1988, the Tegtmeyers accepted the drafts and executed a covenant not to sue Snellen.

Farmers relies on *Kisling v. MFA Mutual Ins. Co.,* 399 S.W.2d 245 (Mo.App.1966), for the validity of the exclusion. The *Kisling* court held a similar settlement provision was contractual and, in the absence of contrary public policy, was allowed to stand. *Id.* 251–52. Along came *Craig v. Iowa Kemper Mut. Ins. Co.,* 565 S.W.2d 716 (Mo.App.1978), and struck down such a provision as to settlement with a joint tortfeasor (not the uninsured motorist), noting that the enactment of mandatory uninsurance coverage in § 379.203 RSMo postdated *Kisling,* and the new statute ruled out policy provisions designed to restrict the insured from benefits, because to do so would evade the purpose of the statute in providing coverage to insured motorists. *Id.* 399 S.W.2d at 275. The *Craig* opinion went on to say:

> The consent prohibition attempts to make a mandatory obligation of full coverage only conditional. In effect, the policy exclusion only chills settlements with joint tortfeasors to the detriment of the injured person and subserves no legitimate purpose of the insurer.

*Id.* 399 S.W.2d at 275. *See also Lebs v. State Farm Mut. Auto. Ins. Co.,* 568 S.W.2d 592, 593 (Mo.App.1978).

In reaching a decision on this point, the court does not reach the issue of extending *Craig* and *Lebs* into the area of settlement between the insured and the uninsured motorist. The validity of this clause under the present factual scenario is not reached.

The reason for such a consent exclusion is to keep the insured from striking a settlement with the tortfeasor which would impair the insurer's right to subrogation, and such exclusion will generally be upheld "unless consent is unreasonably withheld." *Rister v. State Farm Mut. Auto. Ins. Co.,* 668 S.W.2d 132, 136 (Mo.App.1984). In the case at bar, it is hard to imagine how Farmers would be damaged or prejudiced when the insured obtained the absolute policy limits from the negligent driver. The Tegtmeyers couldn't have gotten any more money than they did from Snellen, and the larger amount of money they received inured to the benefit of Farmers, whether treated as a true setoff or primary proceeds, as discussed in Part III, *infra*. Although it "would be patently unjust to permit a third party tortfeasor, with knowledge of an insurer's subrogation interest, to settle with the insured for less than the wrongdoer's full liability, and become thereby insulated against the insurer's right of action against the tortfeasor," such is not the case where the insured asked for consent to get the maximum. *Dickhans v. Missouri Property Ins. Placement Facility,* 705 S.W.2d 104, 106 (Mo. App.1986). Before Farmers can totally escape liability under its policy regarding the violation of the condition of consent, it must appear that it was prejudiced. *Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 32 (Mo. 1969); *Safeco Ins. Co. of America v. McGuire,* 652 F.Supp. 1520 (E.D.Mo.1987). *See also* MAI No. 32.24. There is no evidence here of any prejudice to Farmers. *Pannell v. Missouri Ins. Guaranty Ass'n.,* 595 S.W.2d 339, 348 (Mo.App.1980). This point is ruled in favor of the insured.

### III.

■ In resolving this point, the court will use a two step process, in part necessitated by the policy treating "uninsured" and "underinsured" as being the same.

The first step concerns the stacking question. In *Bergtholdt, Krombach* and now *Maxon,* the court of appeals, following the public policy set out in *Cameron,* approved the stacking of "underinsured" policy provisions where there were multiple policies which chose to treat both coverages as "uninsured". In this case, the three $50,000/$100,000 policies are lumped together for coverage of $150,000 per person and a total for this accident of $300,000.

Step two involves a determination of the effect of the tortfeasor's payment toward the actual damages *vis-a-vis* the above stated "underinsured" question.

Missouri does not mandate underinsurance coverage on policies, therefore, it is a totally optional item. Two districts have formalized the reasonable expectations of a layperson who opts to buy underinsured coverage—"... to provide for compensation up to the limit of coverage, where the tortfeasor's is insufficient to cover his loss." *Krombach, supra,* at 734; *Geneser v. State Farm Mutual Automobile Ins. Co.,* 787 S.W.2d 288 (1989). Such coverage makes sense for a motorist, it is protection for losses in excess of the tortfeasor's policy limits. *Maxon, supra,* at 440; *Geneser, supra,* at 291. Such an expectation as proposed by the Tegtmeyers is totally reasonable despite policy language that points toward the tortfeasor's insurance as providing an offset.

> The principle of reasonable expectations insures that " '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971)."

*Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656 (Mo.App.1980); *Husch by Husch v. Nationwide Mutual Fire Ins. Co.,* 772 S.W.2d 692, 694 (Mo.App.1989).

There is no danger in non-property damage claims like this of overinsurance and promotion of fraud by the insurance pur-

chaser. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina,* 716 S.W.2d 348, 355 (Mo. App.1986).

As this district said in *Maxon,* and the eastern district said in *Krombach,* under those circumstances underinsurance coverage should mean payment for a loss that exceeds the recovery from the other negligent driver, up to the limit of the insured's policy. This court, as a matter of public policy, adopts this definition. It will give what a purchaser would reasonably expect, a certain sum of money over what was recovered from the tortfeasor. This definition gives "credit" for an insurer in the position of Farmers, in that its underinsurance is in essence secondary or excess, it only applies *after* the tortfeasor's insurance. As stated earlier, the amount of special damages of Mr. and Mrs. Tegtmeyer appear substantial and their total damage is at this time undetermined. Under the interpretation now given in this case, and by way of example, if one of the insureds here had $100,000 damages, the entire amount would have been paid by the Auto Club; with $150,000 damages, the Auto Club would pay $100,000 and Farmers would be liable for $50,000; and if damages were $250,000, Farmers would pay the maximum amount of $150,000. (Of course, the maximum for the occurrence would be the policy limit of $300,000). Any other interpretation of the policy would render this coverage meaningless. *Weber v. American Family Mut. Ins. Co.,* 868 F.2d 286, 288 (8th Cir.1989). The trial court's judgment on this point is reversed, public policy dictates the coverage here is excess to the Snellen policy.

The judgment is affirmed as to the allowance of stacking the three policies, it is reversed as to a disqualification by the plaintiffs for failure to comply with the consent provisions of the policies and reversed as to that portion limiting recovery by August and Betty to $50,000 apiece. The case is remanded to allow judgment against the defendants up to the combined policy limits if damages are proven over the amounts already received from the tortfeasor's insurer.