**Carolyn & Roger MARSHALL, Respondents,**

v.

**NORTHERN ASSURANCE CO. OF AMERICA, Appellant.**

**No. WD 46615.**

Missouri Court of Appeals, Western District.

May 11, 1993.

Paul Hasty, Jr., Lee R. Hardee, II, Kansas City, for appellant.

Leland F. Dempsey, Kansas City, for respondents.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

Northern Assurance Company of America appeals from a summary judgment entered against it by the Clay County Circuit Court. The Marshalls, respondents herein, were insureds of Northern Assurance Company of American ("NACA"). On or about July 14, 1989, while so insured, Carolyn Marshall was involved in an automobile accident with William G. VanDruff, Jr. VanDruff was a Kansas resident and an underinsured motorist under the terms of the policy of insurance issued the Marshalls by NACA.

As a result of the accident, the Marshalls sued VanDruff in Clay County, Missouri, and subsequently received a judgment in the sum of $45,000. VanDruff's insurance policy with Farmers Insurance Company had a liability limit of $25,000 per person. On the same day the judgment was entered, the Marshalls executed a covenant, pursuant to § 537.065, RSMo 1986, not to garnish or execute against the assets of VanDruff in return for payment of $25,000, VanDruff's policy limits.

Subsequently, the Marshalls instituted this action against their insurance carrier, NACA, pursuant to the underinsured provision of that policy. Both parties filed motions for summary judgment with suggestions and partial transcripts of depositions of VanDruff and Jay Vorke, an employee of Commercial Union Insurance Company, of which appellant is a subsidiary. In its motion, NACA alleged that, by entering into the covenant not to garnish or execute against VanDruff's assets, the Marshalls breached their contractual agreement with NACA to do nothing after their loss to prejudice NACA's subrogation rights. The Circuit Court of Clay County ruled in favor of the Marshalls, granting their motion for summary judgment and denying NACA's. NACA appeals from this judgment.

On appeal, NACA alleges that the trial court erred in granting summary judgment in favor of the Marshalls because (1) by entering into a covenant not to execute, garnish, or initiate any other collection proceeding against tort-feasor VanDruff, the Marshalls breached their contractual obligations to protect NACA's subrogation right; and (2) under Missouri law, a right of subrogation does exist against the underinsured tort-feasor because the Marshalls' personal injury cause of action had merged into a judgment and a judgment is assignable.

We review a summary judgment as if it were a court-tried case and affirm it unless the judgment erroneously declares or applies the law. *Dickhans v. Missouri Property Ins. Placement Facility*, 705 S.W.2d 104, 106 (Mo.App.1986). When reviewing a summary judgment, we must review the entire record in the light most favorable to the party against whom judgment was entered. *Atlanta Casualty Co. v. Stephens*, 825 S.W.2d 330, 332 (Mo.App. 1992). If the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is proper. Rule 74.04(c). The burden is on the movant to show that no genuine issue

of material fact exists. *Earl v. State Farm Mut. Auto. Ins. Co.,* 820 S.W.2d 623, 624 (Mo.App.1991).

We address appellant's points in reverse order. The Marshalls argue that the subrogation rights of NACA pursuant to the under-insured motorist policy are invalid because, in Missouri, assignment of a personal injury cause of action is invalid and NACA's subrogation in this case would be for a personal injury cause of action. NACA argues that the cause of action has been merged into the judgment entered by the trial court in the under-lying action against VanDruff and that, in Missouri, judgments are assignable.

The Marshalls cite three cases for the proposition that a personal injury cause of action is not assignable. *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418 (Mo.App. 1965); *Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W.2d 205 (Mo.App.1970); and *Jones v. Aetna Casualty & Sur. Co.,* 497 S.W.2d 809 (Mo.App.1973). While we agree that these cases accurately reflect the law of Missouri as to personal injury causes of action, they are inapposite to the facts of this case. In each of the cases cited, the insured has, prior to entry of a judgment on the underlying tort action, entered into a settlement with the tortfeasor. Missouri cases have long distinguished between settlements and entries of judgments. In *Forsthove v. Hardware Dealers Mut. Fire Ins. Co.,* 416 S.W.2d 208 (Mo.App.1967), the court adopted the rule that "such causes of action may not be assigned *prior to judgment* for reasons of public policy." *Id.* at 217 (emphasis added). *See also Chuning v. Calvert,* 452 S.W.2d 580, 584 (Mo.App.1970) (Assignment of personal injury cause of action prior to judgment void as against public policy). The court in *Forsthove* found that, because the insured and the tort-feasor had entered into a compromise settlement, there was no judgment. Such is not the case here. The Marshalls reduced by trial their cause of action against VanDruff to a judgment.

■ Public policy reasons for prohibiting the assignment of a personal injury cause of action do not apply where the action has been reduced to judgment. *Forsthove* enunciates those public policy reasons.

There is every reason for holding that a cause of action for personal injuries, where the gist of the damages recovered is physical pain and mental anguish, should not be the subject of barter or trade, or a matter of profit to the creditors of the injured party....

*Forsthove,* 416 S.W.2d at 216 (citations omitted). The objection to such assignment is that "unscrupulous people would purchase causes of action and thereby traffic in law suits for pain and suffering." *Id.* at 217 (citation omitted).

In the case *sub judice,* there is no attempt to traffic in the Marshalls' "physical pain and mental anguish," but rather for the insurer to be reimbursed by the wrongdoer who caused the pain and anguish. Missouri courts have stated,

it would be patently unjust to permit a third party tortfeasor, with knowledge of an insurer's subrogation interest, to settle with the insured for less than the wrongdoer's full liability, and become thereby insulated against the insurer's right of action against the tortfeasor.

*Dickhans v. Missouri Property Ins. Placement Facility,* 705 S.W.2d 104, 106 (Mo. App.1986); *Tegtmeyer v. Snellen,* 791 S.W.2d 737, 740 (Mo.App.1990). It is apparent from the language of the covenant that VanDruff knew of NACA's subrogation interest. If NACA had paid under the underinsured motorist provision of the policy, the Marshalls would have been made whole and would also have been relieved of any collection efforts against the tort-feasor. Under those circumstances, the insurer should have a right to recover what it can from the wrongdoer and the wrongdoer should not benefit from his victim's foresight.

In *Tegtmeyer,* the insured victims settled their personal injury cause of action against the tort-feasor without obtaining consent of the insurer, which was required under the policy. *Id.* at 738. One issue addressed by this court in *Tegtmeyer* was whether the insured victims could then make a claim against their own insurer

pursuant to the underinsured motorist provision of their insurance policy. This court found that the consent exclusion should not be honored because the insurer had not been prejudiced by the settlement entered into by the insured and the tort-feasor. In the case at bar, NACA has shown that, if the covenant is valid, it would be prejudiced by the Marshalls' agreement with Van-Druff because VanDruff has assets subject to garnishment or attachment.

■ Underinsured motorist coverage is contractual. Absent contrary public policy, the parties to a contract are free to condition their undertaking as they choose, even to the forfeiture of benefits. *Craig v. Iowa Kemper Mut. Ins. Co.*, 565 S.W.2d 716, 725 (Mo.App.1978). The Marshalls agreed that they would do nothing after loss to prejudice the subrogation rights of insurer. The purpose of offering underinsured motorist coverage is to provide the insured a way to protect him or herself from those drivers who fail to adequately insure against accidents—not to protect the tort-feasor who has opted to purchase the minimum amount of insurance coverage required under Missouri statutes. If NACA is afforded no right of subrogation, the wrongdoer receives the benefit of the insurance he purchased plus the benefit of that purchased by the injured party.

■ This brings us to NACA's first point on appeal, that by entering into a covenant not to execute, garnish, or initiate any other collection proceeding against tort-feasor VanDruff, the Marshalls breached their contractual obligations to protect NACA's subrogation right. As stated above, summary judgment is proper only where no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. Rule 74.04(c). The exact issue *sub judice* has not been addressed by Missouri courts. The cases most analogous to the one at bar are *Dickhans v. Missouri Property Ins. Placement Facility*, 705 S.W.2d 104 (Mo.App.1986); *Community Title Co. v. Safeco Ins. Co. of America*, 795 S.W.2d 453 (Mo.App.1990); and *Travelers Indemnity Co. v. Chumbley*, 394 S.W.2d 418 (Mo.App.1965). *Dick-*

*hans* and *Community Title* deal with insurance claims on property damage. Because we find that the prohibition against assigning a personal injury cause of action is not applicable, the cases are most instructive.

In *Community Title*, the insured released the tort-feasor without the consent of the insurer. In that case the insurer had wrongly denied coverage of the loss. The court stated that "Missouri recognizes that a release of the tortfeasor by the insured which destroys the insurers' subrogation rights bars the insured from recovering under the policy as a matter of law." *Community Title*, 795 S.W.2d at 461. The court also stated that if the insurer wrongfully denies coverage, it cannot later invoke the exclusionary language of the policy to relieve its obligation to pay when settlement of the action against the tort-feasor was without the written consent of the insured. *Id.* Such is not the case with NACA and the Marshall's initial claim. There is no allegation that coverage was wrongfully denied. In fact, NACA would not be liable unless and until it was determined that VanDruff was an underinsured motorist.

In *Dickhans* and *Travelers*, the courts addressed the insurer's right to recover against the tort-feasor or the insured. In those cases, the insurer had paid at least part of the insured's claim prior to the insured entering into a settlement agreement with the tort-feasor. The *Dickhans* court stated as follows:

As a general rule when an insured, without the insurer's knowledge or consent, settles with and fully releases the tortfeasor so as to foreclose the insurer's right of subrogation, the insured violates his agreement with the insurer thereby precluding his right of recovery under the policy. However, this rule has no application where the third party tortfeasor is aware of the interest of the insurer and consents to a settlement with the insured for that amount over and above the amount which the insurer has paid or become obligated to pay. In such a case, the third party tortfeasor is held to have

consented to the splitting of the cause of action against him. . . .

*Dickhans,* 705 S.W.2d at 106.

The *Travelers* court, in addressing the insurer's claim against the insured for repayment of amounts paid to insured prior to the settlement between insured and the tort-feasor, held as follows:

> [I]f a third party tort-feasor, with knowledge of an insurer's right of action as subrogee, and without the consent of the insurer, settles with the insured, the insurer's right to proceed against such tort-feasor is not affected. In such case, the primary wrongdoer, and not the insured, should repay the insurer.

*Travelers,* 394 S.W.2d at 420. Whatever rights the insurer had against the tort-feasor prior to the settlement, the insurer still has. *Id.* In *Travelers,* the court denied the insurer recovery against the tort-feasor because the personal injury cause of action had not been reduced to judgment and such an action is nonassignable.

It is obvious from the language of the covenant entered into between the Marshalls and VanDruff that VanDruff knew of NACA's interest. Therefore, we find that it would be "patently unjust" to allow VanDruff to enter into a covenant with the Marshalls limiting his own liability and thereby insulating himself against NACA's right of subrogation against him.

Accordingly, we find that the covenant entered into between the Marshalls and VanDruff is not binding on NACA. Therefore, the Marshalls did not breach their contractual obligation to protect NACA's subrogation right because that right still exists. Because the Marshalls have not breached their contract, NACA must perform under the contract. When NACA has paid the Marshalls pursuant to the underinsured provision of the insurance policy, NACA then will be entitled to attempt to recover from VanDruff any monies NACA has paid to the Marshalls because of the automobile accident that was the subject of the tort action.

Accordingly, we affirm the summary judgment in favor of the Marshalls and against NACA.

All concur.